[Civ. No. 6380.  First Appellate District, Division One.—September 22, 1928.]

In the Matter of the Estate of A. J. MESMER, Deceased.

Wallace Rutherford for Appellant.

Mahoney & Sweeney for Respondent Mesmer.

Gillogley, Crofton & Payne for Respondents Smith and Burdick.

BEAUMONT, J., *pro tem.*—A. J. Mesmer, decedent herein, and Elizabeth G. Mesmer were married in June, 1897. In August, 1917, while an action for divorce, instituted by the wife, was pending, the parties entered into an agreement regarding their property and providing for the maintenance of the wife. This agreement was apparently carefully drawn, and covers eleven pages of the printed record. It goes into detail concerning the property, and sets out minutely items concerning certain expenses and taxes. By the terms of the agreement all of the community property was conveyed to defendant. The agreement provides in effect that defendant will pay plaintiff ''alimony, and costs and attorney's fees allowed by the court, such alimony not to exceed the sum of $200.00 cash, and $75.00 per month.'' The defendant further agreed that he would make a will in which he would leave plaintiff one-fourth of all the property of which he might die possessed, provided plaintiff should survive him. It was also agreed that the parties were, within a fixed period, to select a lot with a house thereon, which was to be used as a home for plaintiff; that this was to cost not less than $2,000 and not more that $2,750; that if the parties could not agree upon a place, then B. A. Smith was to select a location, and his selection was to be binding on the parties; that the property was to be purchased by the defendant in his own name and at his own expense, and that he was to convey to plaintiff a life estate therein; that defendant, during his lifetime, was to pay taxes, insurance, and repairs within a fixed limit. ''In consideration of the foregoing agreement'' (referring to the agreement between the said plaintiff and defendant) and certain valuable consideration, B. A. Smith guaranteed that defendant would pay for the maintenance of said Elizabeth G. Mesmer at the times and in the manner required by the terms of said agreement and any decree ''that might be entered in the said divorce action,'' but limited his guaranty to payments that would become due during the lifetime of defendant. At the end of this guaranty agreement, said Smith states

that all his liability shall end, "except as to such liability as may have been incurred hereunder previous to the death of said Alphonse J. Mesmer, and which was due and payable previous to the death of said Alphonse J. Mesmer." On the day of the execution of both of the foregoing agreements, August 23, 1917, the divorce action was tried. The court found the agreement settling the rights of the parties was reasonable, and approved it, and further found that by reason of this agreement there was "no community property of the marriage of the said plaintiff and defendant to be divided between the parties to this action, or to be assigned to either of the parties." The court ordered defendant "to pay to said Elizabeth G. Mesmer, the sum of $200.00 . . . upon the entry of this decree, and the further sum of $75.00 per month in gold coin of the United States hereafter during the lifetime of the said plaintiff, or until she remarries." The decree was granted on the ground of extreme cruelty, and recites as follows: "Findings herein and notice of decision and judgment having been expressly waived by the respective parties to this action, by oral consent in open court, entered in the minutes of the court." The decree was never modified, annulled, or appealed from. A. J. Mesmer made all the payments required under the decree until the date of his death, more than eight years thereafter.

A. J. Mesmer made a will, and by the terms of this will Elizabeth G. Mesmer was to have one-fourth of said A. J. Mesmer's estate, the remainder to go to Clara Mesmer, who was his wife at the time of his death. Clara Mesmer, while the matter of her husband's estate was pending, married Roy W. Ballard. Before distribution was ordered, Clara Ballard died. Said Roy W. Ballard appears herein as residuary legatee and executor of his wife's will.

Elizabeth G. Mesmer filed her claim against the estate for payment to her of $75 a month during her life. This claim was allowed by the executors, one of whom is B. A. Smith, the former partner of the decedent and the same B. A. Smith named in the agreements referred to herein. When the matter of settling the final account was before the court, testimony was taken. One of the witnesses was B. A. Smith, who testified he had known A. J. Mesmer for more than thirty years; that he and the decedent Mesmer were for

some years partners in business, and that decedent at the time of the property settlement with Elizabeth G. Mesmer was worth approximately $100,000. The court approved the claim, ordered that the payments due since the death of Alphonse J. Mesmer be paid, and directed the executors to purchase an annuity from some responsible life insurance company for the payment of $75 per month to Elizabeth G. Mesmer, or that the executors pay in cash to said Elizabeth G. Mesmer a less amount than the amount required to purchase such annuity. Roy W. Ballard has appealed from the order allowing the claim and from that part of the order directing the executors to purchase an annuity.

Appellant sets out in his brief numerous points for reversal of the orders. All of these, however, are but variations of two contentions. The first is that the decree in the divorce action directing payments to Elizabeth G. Mesmer had no binding effect after the death of A. J. Mesmer.

The agreement between the parties in the divorce action shows that plaintiff relinquished all her right in the community property; that in consideration thereof, defendant was to make certain arrangements for the support of plaintiff. Most of the provisions of this agreement were definite, evidencing the fact that the parties had reached conclusions thereon. Some of them, however, were incomplete. For example, it was not certain as to the selection of a location for a home for plaintiff. If the parties could not agree as to this, then B. A. Smith was to make the selection, and his choice was to be binding on the parties. Likewise the amounts, time, and duration of the payments for the maintenance of plaintiff were not determined, but were to be such as were "allowed by the court, such alimony not to exceed $200.00 cash, and $75.00 per month." It was proper for these matters, both as to the selection of a home for plaintiff and as to provision for support of plaintiff, the parties so desiring, to be left to the judgment of other persons, and the action of such persons is binding upon the parties to such agreement. (*Methodist Episcopal Church* v. *Seitz*, 74 Cal. 287 [15 Pac. 839].) "An agreement that the question of alimony should be referred to a member of the court is not objectionable." (19 C. J. 252.) In *Carson* v. *Murray*, 3 Paige (N. Y.), 483 [18 A. L. R. 1056], the court said: "I cannot see that there is anything in the contract,

as proved, to render it invalid. It appears to have been an agreement for an immediate separation; the amount of alimony to the wife, and the particular mode of carrying it into effect, to be settled by the arbitrators selected by the parties."

As an aid to the construction of the contract, we may take into consideration the circumstances under which it was made and the matter to which it relates. (Civ. Code, sec. 1647.) Elizabeth G. Mesmer had sued for divorce on the ground of extreme cruelty. There was community property, consisting of real property in Oakland and Richmond, a partnership interest in a shoe business and stock in various corporations. Her husband was worth $100,000. She had lived with him as the wife of his youth until middle age, more than twenty years. If she should secure a decree of divorce she had reason to expect to receive more than one-half of the community property. (*Gorman* v. *Gorman,* 134 Cal. 378 [66 Pac. 333].) By her agreement, made in consideration of relinquishing all right in the community property, she was to receive, in addition to the payments to be ordered by the court and the promise of defendant to leave one-fourth of his estate to her, a life estate in a home. On the whole, the contract bespeaks a desire on the part of A. J. Mesmer to provide for his then wife for her lifetime, and the order of the court to that end, fixing the duration of the payments for life or until she should remarry, was consistent with the tenor of the agreement as well as within the specific covenant that the court should determine the allowance she was to receive.

The acts of the parties as set forth in the statement of facts herein show the interpretation they placed on the agreement. Without taking the time to advert to all of these, we shall point out that the record discloses that the parties, by oral consent in open court, waived findings and notice of decision; that B. A. Smith, whose agreement of guaranty was attached to the contract between the parties and was made "in consideration" thereof, expressly limited himself to payments that might be due previous to the death of A. J. Mesmer, thereby indicating that he contemplated payments might become due and payable subsequent to Mesmer's death. The same B. A. Smith was one of the executors of decedent's will, and as such executor allowed

the claim of Elizabeth G. Mesmer, again placing his construction upon the agreement.

In *Storey* v. *Storey*, 125 Ill. 608 [8 Am. St. Rep. 417, 1 L. R. A. 320, 18 N. E. 329], the husband having consented to the entry of a decree for the payment of a certain sum per annum to his wife "for so long as she may be and remain sole and unmarried," the court held the estate of the deceased husband responsible for the payments due after his death. In that case a bond and trust deed were given to secure the payments ordered in the decree. The court said: "The decree, the bond, and the trust deed, which all bear the same date, must be regarded as one transaction, and must be considered together in determining the intention of the parties in making their agreement for alimony." Again, in the same case, the court remarked: "Here the equities in appellant's favor appeal strongly against the withdrawal of the support provided for by the agreement of her husband. . . . By her and his joint exertions the value of his fortune had reached nearly half a million of dollars at the time of the divorce."

"It is generally held that the husband may, by agreement, bind his personal representatives for the payment of alimony to the wife during her life." (19 C. J. 279.) "While it is true that husband and wife cannot lawfully enter into an agreement for divorce, yet it is well settled that the amount of alimony which the husband is to pay to the wife, the terms of the payment and the length of time during which such payment is to continue, may be all arranged between them by consent, subject to the ratification of the court. . . . Similarly, where by the consent of the parties alimony is awarded for the natural life of the wife, it continues to subsist even after the husband's death." (1 R. C. L. 935, and cases cited.)

In *Stratton* v. *Stratton*, 77 Me. 373 [52 Am. Rep. 779], the parties entered into an agreement that two referees should determine what alimony a wife should receive and how she should receive it and that the decision should be binding on the parties. In the decree of divorce the court ordered that the payments should be made as provided in the award of the referees. After the defendant's death no payments were made. Action was brought against his administrator. On appeal, it was said that "the court, in

adopting the award of the referees as a part of its decree, gave alimony to the wife 'during her natural life.' "

This case presents a quite similar situation to that before the court in *Parker* v. *Parker*, 193 Cal. 478 [225 Pac. 447], as to the question of consent of the parties. There the parties stipulated that "if a decree for a divorce should be awarded to either party, the court instead of dividing the property of said parties between them might provide for the separate maintenance of defendant by awarding to her certain property for life, and that plaintiff pay defendant such monthly allowance and secure the same by a lien upon such property of plaintiff as in the discretion of the court should seem proper." Thereupon the court ordered that "plaintiff pay to said defendant the sum of $50.00 on the first day of each and every month during the remainder of her natural life." The judgment was upheld on appeal, the supreme court saying relative to the award: "It rests not upon the obligation which the law imposes upon a husband to support a wife, but upon the contract of the parties thereto." Here we find that because of the agreement between the parties there was no community property to divide, but that the defendant, having been given, by the terms of said agreement, all of the community property, had consented that the court should fix the payments he was to make for the support of his then wife. This the court did, ordering payments to be made on the tenth day of each month thereafter during the lifetime of the wife. The decedent husband, having consented to be bound by any order the court should make, his estate is bound by the order the court did make.

Appellant's second contention is that the court should not have directed the purchase of an annuity, for the reason that the sum necessary therefor, about $13,000, will be lost entirely to the estate. We are of the opinion that this is sound. The purpose of A. J. Mesmer will be subserved by having the executors make the payments prescribed by the court. These payments will have to be made from the general assets of the estate, no provision therefor having been made in the will. In the interest of justice, therefore, it seems to us proper that the executors be directed to set aside sufficient of the funds of the estate to pay $75 per month to Elizabeth G. Mesmer as long as she lives, or until

she remarries; or invest such sum, under approval of the superior court acting in its probate jurisdiction, as will produce sufficient income to make such payments.

As to the allowance of the claim of Elizabeth G. Mesmer, the order is affirmed. As to that part of the order directing the purchase of an annuity, it is reversed, with directions to proceed in accordance with the opinion expressed herein.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 24, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 19, 1928.

All the Justices concurred.