JOSEPHINE GUINTA, et al., v. JUDITH IDA LO RE, as Executrix of the Estate of Baldassaro Guiseppe Lo Re, Deceased.

31 So. (2nd) 704         June Term, 1947
August 1, 1947             En Banc

*Macfarlane, Ferguson, Allison & Kelly,* for petitioners.
*Schonbrun & Kessler,* for respondent.

BARNS, J.:

In November, 1931, Josephine Lo Re was divorced from Baldassaro Guiseppe Lo Re, and by stipulation she was awarded the custody of their two minor children, Antoinette Lo Re and Catherine Lo Re. The divorce decree also required Baldassaro Guiseppe Lo Re to pay Josephine Lo Re ten dollars per week for the support of the children, commencing the first day of November, 1931. Baldassaro Guiseppe Lo Re died May 27, 1946, at which time it is alleged that he had paid Josephine Lo Re $5,434 in compliance with the divorce decree, but it is also alleged that his payments thereon were $2,176, in arrears. His widow (second wife) Judith Ida Lo Re was appointed executrix of his estate.

On July 17, 1946, petitioners filed their claim against the estate of the decedent in the probate court for all amounts due on the divorce decree at the time of his death, including such amounts as would accrue to the children under the decree on May 11, 1950, and July 16, 1951, the dates they would reach their majority. The executrix refused payment of these claims on the ground, (1) as to the amount alleged to be due at the death of the decedent, she contends that it was paid and discharged during his lifetime. (2) As to the amount alleged to have accrued after the death of the decedent and before the children attained their majority, she says that decedent's

duty to contribute to the support of his minor children was terminated by his death, and no such claim can now be enforced.

Petitioners thereupon filed their bill of complaint in the Circuit Court, praying for an adjudication of the amount due them at the death of their father, and for such amounts as would accrue to them between the death of their father and the date they attain their majority, and that said sums be charged against the father's estate. A motion to dismiss was overruled and on final hearing the chancellor found that petitioners had no valid claim for amounts accruing after the death of their father, but as to matured installments the chancellor held that these could be recovered, for there was an adequate remedy at law, and transferred the cause to the law side of the docket for proper pleadings and determination. This appeal is from that part of the decree holding that no valid claim existed in favor of petitioners against their father's estate for amounts accruing to them after his death and prior to their majority.

A point for determination is whether or not a divorce decree requiring the father to pay ten dollars per week for the support of his minor children is enforceable against his estate for amounts accruing after his death and during the minority of his minor children.

It is a maxim that equity acts in personam and not in rem.

The decree of the chancellor was:

"IT IS ALSO FURTHER ORDERED, ADJUDGED AND DECREED that the complainant pay to the cross-complainant, for the maintenance of their said children, the sum of TEN DOLLARS ($10.00) per week, commencing the first day of November, A. D. 1931."

Upon death the obligation under this decree ended.

Instead of proceeding in the original suit wherein the decree was rendered by attempting to have the executrix substituted as a party in lieu of the deceased husband the wife brought an independent suit to enforce the decree.

It is our conclusion that this suit should be treated as supplemental to the original suit for divorce; that equity has jurisdiction to adjudicate the amounts due and unpaid under

the original decree as of the date of the husband's death and to enter a money judgment for such amounts absent other equities.

Whereupon it is ordered that the writ be denied except as to the part of the chancellor's order transferring the cause to the law side of the Court. This was originally a suit in equity and there is no reason why equity cannot do complete justice respecting it. Equity having taken jurisdiction will ordinarily do complete justice between the parties. As to that part of the order transferring the cause to the law side of the Court the petition is granted and the order is quashed.

BUFORD, and ADAMS, JJ., and TAYLOR, Associate Justice, concur.

THOMAS, C. J., and TERRELL, J., dissent.

TERRELL, J., dissenting:

I agree to the majority opinion and judgment in so far as it reverses the chancellor for transferring the cause to the law side of the court. In other respects I dissent. The controversy is between the second wife and the minor children of the first wife over the intestate estate of the father, Baldassaro Guiseppe Lo Re. Whether the estate is worth ten dollars or ten million dollars is not shown. The minor children of the first wife contend that they should share in its division by the terms of the divorce decree. The effect of the majority holding is to deny them any claim to the estate whatever. I am conscious of the rule of the common law that the obligation of the father to support his minor children terminates with his death, but the common law rule has been repudiated in this country more frequently than it has been followed. Whether followed or repudiated, it has little if any influence in formulating the controlling rule in this State.

In this jurisdiction, courts of equity are charged with the duty of protecting infants and incompetents, under the theory that they are wards of the Court. Turner vs. Andrews, 143 Fla. 88, 196 So. 449. Courts of equity have inherent jurisdiction to control and protect infants and their property. In England this was one of their most distinctive duties and

is not impaired by statutory provisions. Duke v. Duke, 109 Fla. 325, 147 So. 588; Fisher v. Guidy, 106 Fla. 94, 142 So. 717-721. In Davis v. Davis, 143 Fla. 282, 196 So. 614, we held that minors were wards of the Court, whose duty it was to promulgate such orders from time to time as seem best for their welfare. This being the philosophy that has moulded the law on the subject in this State, it matters not what the law may be elsewhere when divorce has shattered the family relation or severed the ties that bind it and minor children are left as wards of the Court, there certainly could be no support for a hard and fast rule that the father or his estate would under no circumstances be held responsible for the suport of his minor children after his death. There may of course, be circumstances under which his estate would not be charged with their support, but if it is ample and the needs of his minor children require, the arm of equity may reach out and subject it to their support. The fact that the father, as in this case, was the one responsible for upsetting the family ties, adds force to this conclusion. If this is not the law, the responsibility of the Court to protect minors in such cases becomes a futile gesture and they become dependent on society.

In promulgating his decree, the chancellor should bear in mind that its objective is in no sense punitive as a recompense for family frustration, but is directed solely to the care and support of the minor children. For this reason his jurisdiction of the rem must be a continuing one that the decree may be modified from time to time to satisfy the needs of the infant within the scope of the father's ability and means to provide. The chancellor should be guided by the facts in the particular case but when a father leaves means, and minor children that are dependent, as between his estate and some form of charity, his children have the superior claim on his estate. Their welfare is the first consideration of the chancellor and Section 65.14, Florida Statutes 1941, affords him all the authority he needs to protect them.

I think that when a divorce decree against the father requires him to pay specified sums at a time stated, for the

support of his minor children, he should not be discharged from such payments by his death, if the necessities of the children continue, and the estate of the father is sufficient to take care for their needs. If the father assumes other obligations in the nature of a second marriage, they are said to be subordinate to those he owes to support his children. 17 Am Jur. 536. It is inconsistent with the whole theory of our law that infants become charges on society if the parent has an estate that may be made available to them. Whether the parent is living or dead is not material. Society is not presumed to take over so long as the father's means are not exhausted. There is no suggestion of a will or any prior incumbrance on the estate, so any question that might be raised as to these is not before us, and as to them no opinion is expressed.

The foregoing conforms with current thought on the question and is supported by the following cases: West v. West, 241 Mich. 679, 217 N.W. 924; Newman v. Burwell, 216 Cal. 608, 15 Pac. (2) 511; Smith v. Funk, 141 Okla. 188, 284 Pac. 638; Mansfield v. Hill, 56 Oregon 400, 107 Pac. 471, 108 Pac. 1007; Stone v. Bayley, 75 Wash. 184, 134 Pac. 820; Murphy v. Moyle, 17 Utah 113, 53 Pac. 1010; Miller v. Miller, 64 Me. 484.

I think the chancellor was in error and should be reversed, both as to his holding on the main question and as to that part of the final decree transferring the cause to the law side of the docket. I therefore dissent from the majority opinion and am authorized to say that Mr. Chief Justice THOMAS concurs in this dissent.

THOMAS, C. J., concurs.