93 So.2d 390 (1957)
Beulah V. JOHNSON, Petitioner,
v.
W. Richard EVERY, as Ancillary Administrator of the Estate of James Nelson Johnson, Deceased, Respondent.
Supreme Court of Florida, En Banc.
February 6, 1957.
Rehearing Denied March 20, 1957.
*391 Turner, Hendrick & Fascell, Miami, for petitioner.
Paul & Sams, Miami, for respondent.
THORNAL, Justice.
Appellant seeks reversal of an order of the Chancellor denying her petition to compel payment of alimony and quashing a writ of scire facias issued on the basis of her petition.
The principal point for determination is whether under the facts shown by this record a former wife can assert a claim for unmatured alimony against the estate of her deceased former husband.
*392 On May 20, 1939, the Circuit Court of Dade County entered a decree of divorce in favor of Beulah V. Johnson and against James Nelson Johnson. By the decree Beulah V. Johnson was awarded the sum of $25 per week for support and maintenance, it being provided that the payment of such sum "shall cease, upon the death of the plaintiff [Beulah V. Johnson] or upon her remarriage to any person other than the defendant [James Nelson Johnson]." The court expressly retained jurisdiction to enforce the decree.
Prior to the divorce proceeding the parties had entered into a property settlement agreement whereby, among other things, James Nelson Johnson agreed to pay to Beulah V. Johnson the sum of $25 per week and the contract further stipulated that the payments would be made while the contract remained in force and "shall only be terminated by the death of the party of the second part [Beulah V. Johnson] or a remarriage of the party of the second part to a person other than the party of the first part [James Nelson Johnson]."
James Nelson Johnson died on June 23, 1954, and an ancillary administration proceeding was opened in Volusia County, Florida. Thereupon, on June 8, 1955, appellant filed in the original divorce proceeding, which was had in Dade County, Florida, a petition to compel the payment of alimony in accordance with the final decree of divorce. The petition also sought modification of the decree by increasing the amount of the award, both retrospectively and prospectively, and further sought the issuance of the writ of scire facias directed to the appellee, Every, as Ancillary Administrator of the Estate of James Nelson Johnson, seeking to make him a party to the divorce proceeding in order that the James Nelson Johnson Estate might be subjected to the claim of the petitioner.
The Administrator moved to quash the writ and dismiss the petition on the ground that the petition "fails to state a claim upon which relief can be granted." The Chancellor thereupon quashed the writ and dismissed the petition with prejudice. Reversal of this order is sought by this appeal.
Appellant contends that the final decree of divorce as well as the property settlement agreement provided that the payments should be made to her during her lifetime and so long as she remained unmarried and that such a decree and agreement can be enforced against the estate.
Appellee contends that the responsibility for the payment of alimony died with the husband and a claim therefor is not enforceable against his estate.
Although the property settlement agreement was not incorporated in the final decree, the essential aspects thereof were for all practical purposes made a part of the decree. In addition to the provisions recited above, the agreement provided that the wife and husband mutually released the interest of each other in the respective estates of each other. In other words, in exchange for the weekly payments for support and maintenance and other considerations, the appellant-wife surrendered any and all claim she might have against her husband's estate. It should be noted that the property settlement agreement was executed two years before the divorce decree. Both by the agreement and by the decree, it was expressly provided that the weekly payments would be terminated only by the death of the wife or her remarriage to someone other than her former husband.
We subscribe to the proposition that in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband's liability for alimony terminates with his death. On the other hand, where the decree or property settlement agreement expressly provides for the continuance of the payments "until the death of the wife" then the husband's estate remains liable for the obligation in the same manner as it is liable for any *393 other legitimate obligation outstanding at the time of his death. Here there was a provision in the final decree as well as in the property settlement arrangement to the effect that the payments would be made during the life of the wife or until she remarried. She is still living and she has not remarried, and consequently, the conditions for the termination of the weekly payments have not occurred.
This was in effect a part of our holding in Underwood v. Underwood, Fla. 1953, 64 So.2d 281; and Allen v. Allen, 111 Fla. 733, 150 So. 237, 238. In the case last cited, we held:
"* * * As a general rule the obligation to pay alimony dies with the person, but agreements of the husband to bind his representatives to do this have been upheld, and there is no prohibition against them in this state."
The rule stated appears to be applicable to the situation in the case at bar.
Several incidental questions appear in the record. Appellee contends that the claim should be adjudicated in a separate proceeding against the estate rather than by bringing the ancillary administrator into the original divorce proceeding. In Guinta v. Lo Re, 159 Fla. 448, 31 So.2d 704, we recognized by implication the propriety of asserting a claim for support of a minor child by substituting the Executor of the estate of the deceased husband in the place and stead of the husband in the original divorce proceeding although in that case, admittedly, a separate complaint in equity was filed. In the ultimate, it appears to be a problem for equity to resolve and we can see no reason why a husband's estate should not be substituted as a party in his place and stead in a case such as the one before us.
While we concur in the view of the Chancellor that the alimony payments cannot be increased either retrospectively or prospectively after the death of the husband, we cannot concur in the view that as a matter of law his estate is not liable for the amount fixed by the final decree in a situation such as the one presently before us. See Jennings v. First National Bank, 116 W. Va. 409, 180 S.E. 772, 100 A.L.R. 494, 500; and 17 Am.Jur., Divorce and Separation, Sec. 733, p. 550.
The motion to dismiss was sustained on the general ground that it failed to state a claim on which relief could be granted. The reasons for the ruling are not specified. We are compelled to concur in the order of the Chancellor granting the motion to dismiss for the reason that the petition fails to show that the claim had previously been filed against the estate of the husband and rejected by the personal representative. To this extent, the order of the Chancellor must be affirmed.
We are of the view, however, that the motion to dismiss should have been granted with the privilege to the appellant to amend her petition, if she is able to do so, to show that her claim against the estate of her deceased former husband was filed in accordance with the requirements of the Probate Act and rejected by the Administrator thereby compelling the institution of this proceeding. See Sec. 733.16, Florida Statutes, F.S.A.
We agree with appellee that this was a post-decretal order that was subject to review by certiorari rather than appeal. However, under Sec. 59.45, Florida Statutes, F.S.A., the notice of appeal will be treated as "petition for certiorari." As so construed, the petition is granted as to that portion of the order dismissing the petition below "with prejudice", and the cause is remanded for further proceedings in accordance with this opinion. In all other respects, the petition is denied.
TERRELL, C.J., and THOMAS and O'CONNELL, JJ., concur.
HOBSON, ROBERTS and DREW, JJ., dissent.
*394 HOBSON and ROBERTS, Justices (dissenting).
The order here reviewed was entered in proceedings by which Mrs. Johnson, petitioner below, sought to enforce against the estate of her deceased ex-husband a claim for future alimony allegedly due her from his estate, and other relief. Her claim for future alimony was based on a settlement agreement and divorce decree awarding her a divorce from her husband, and she sought to enforce her claim by means of a petition filed in the original divorce suit. In addition to her claim for future alimony, she also sought an increase, both retroactively and prospectively, in the amount of the weekly payments specified in the divorce decree to be made to her by her ex-husband.
Upon the motion of the Ancillary Administrator of the decedent's estate, the Chancellor dismissed Mrs. Johnson's petition. His order dismissed with prejudice "that part of plaintiff's Petition seeking to increase the award of alimony both retroactively and prospectively and to require the Ancillary Administrator to pay alimony after the death of the defendant." But his order of dismissal stated that "[t]he Court is of the opinion that * * * any rights which the plaintiff may have under the contract dated August 18, 1937 between the plaintiff and the defendant, the contract having been presented to the Court by plaintiff subsequent to the hearing and marked Exhibit 1, should be enforced by the method provided by law for the enforcement of any other claim or demand against the estate of the decedent." It is this order which we here review, as on certiorari, under Supreme Court Rule 28, 31 F.S.A.
The pertinent provisions of the divorce decree relied upon by Mrs. Johnson as the basis for her petition are as follows:
"5. That the defendant, James Nelson Johnson, be and he hereby is required to pay to the plaintiff, Beulah V. Johnson, for the support of the plaintiff and their said minor son, the sum of Thirty Dollars ($30.00) per week to be paid weekly, hereafter, until such time hereafter that their said son shall go away to college, and that during the college year while the said minor son is away from the immediate care and custody of his mother, the plaintiff, such payments shall be reduced to the sum of Twenty-five Dollars ($25.00) per week, to be paid weekly, for the support and maintenance of the plaintiff.
"6. That the said payments to the plaintiff, as provided in paragraph numbered `5' hereof, shall cease, upon the death of the plaintiff or upon her remarriage to any person other than the defendant."
The parties here have stipulated (the original record in the divorce suit having been lost) that the settlement agreement was not referred to in the pleadings filed in the divorce suit, nor was it referred to in the divorce decree. It must, however, have been before the court in that cause since the above-quoted provisions of the divorce decree were virtually the same as the provisions of the settlement agreement relating to the weekly payments and the time when such payments should cease. Thus, the divorce decree must have been intended to carry out the agreement of the parties in these respects; and, this being so, it is generally held that, in construing the intention of the Chancellor, it is proper to consider the intention of the parties as evidenced by their agreement. Matter of Baratta's Estate, 199 Misc. 246, 102 N.Y.S.2d 766, affirmed, App.Div., 112 N.Y.S.2d 493; In re Porter's Estate, Sur., 137 N.Y.S.2d 271; In re Estate of Kuchenbecker, 1955, 4 Ill. App.2d 314, 124 N.E.2d 52; Storey v. Storey, 125 Ill. 608, 18 N.E. 329, 1 L.R.A. 320; Walters v. Walters, 341 Ill. App. 561, 94 N.E.2d 726; Mullen v. Mullen, Iowa 1955, 69 N.W.2d 420; Masters v. Masters, 1952, 155 Neb. 569, 52 N.W.2d 802; In re Mesmer's Estate, 1928, 94 Cal. App. 97, 270 P. 732; White v. White, *395 1947, 210 S.C. 336, 42 S.E.2d 537. Billow v. Billow, 1953, 97 Ohio App. 277, 125 N.E.2d 558. Contra: Farrington v. Boston Safe Deposit & Trust Co., 1932, 280 Mass. 121, 181 N.E. 779. We cannot tell from the record whether the Chancellor, in entering the order here reviewed, construed the divorce decree in the light of the parties' settlement agreement; but he should have, and we will do so in our review of his order.
The principal point for determination here is whether it was the intention of the court and the parties, by the terms of the decree and the agreement of the parties embodied therein, to bind the estate of the husband, after his death, to the weekly payments specified therein. Since it is not contended that the Chancellor should have considered the "surrounding circumstances, the occasion, and apparent object of the parties, to determine the meaning and intent of the language employed," St. Lucie County Bk. & Tr. Co. v. Aylin, 94 Fla. 528, 114 So. 438, 441, quoted in Underwood v. Underwood, Fla. 1953, 64 So.2d 281, 288, we must decide whether, within the four corners of the agreement and the decree, such an intention is clearly disclosed. We have concluded that it is not.
The pertinent provisions of the decree have been quoted above. In the settlement agreement, executed two years prior to the divorce, each party released the other from all right, title and interest in and to the property which the other then had "or may hereafter acquire" and renounced the right to administer upon the estate of the other at death. The agreement also stated that the parties had that day "satisfactorily divided their property with each other," and listed the personal property to which each would be entitled upon their separation. The agreement provided for the payment to Mrs. Johnson of $30 per week "for the support of their infant child, * * * and also for the support in the way of subsistence and alimony for the party of the second part, Mrs. Beulah V. Johnson * * *." It was also provided that during the time that the child was away at college, the husband would pay Mrs. Johnson "$25.00 per week for her support and subsistence, being alimony payable by the party of the first part [husband] to the party of the second part [Mrs. Johnson]," and that the payments "for subsistence and support and alimony" should continue during the life of the contract "which shall only be terminated by the death of the party of the second part or a remarriage of the party of the second part to a person other than the party of the first part." Other provisions requiring the husband to continue to carry an educational insurance policy for the minor child and a life insurance policy in favor of Mrs. Johnson were contained in the agreement.
As a general rule, an obligation to pay alimony does not survive the husband's death, although "agreements of the husband to bind his representatives to do this have been upheld, and there is no prohibition against them in this state." Allen v. Allen, 1933, 111 Fla. 733, 150 So. 237, 238; 17 Am.Jur., Divorce and Separation, Sec. 608, p. 473; 27 C.J.S., Divorce, § 240(b), p. 999. Where a settlement agreement specifically states that it is to be binding upon the heirs, executors, administrators or assigns of the husband, there can be no question as to the intention of the parties. Cf. Allen v. Allen, supra; White v. White, 1947, 210 S.C. 336, 42 S.E.2d 537. The difficulty arises where the agreement and divorce decree provide for the payment of alimony to the wife "during the remainder of her life," or "until her death or remarriage," or similar expressions. While there are a few cases holding to the contrary, cf. Wides v. Wides, 1945, 300 Ky. 344, 188 S.W.2d 471; Babcock v. Babcock, 147 Misc. 900, 265 N.Y.S. 470; Durland v. Syracuse Trust Co., 230 App.Div. 786, 244 N.Y.S. 653, the great majority of courts hold that such expressions are not conclusive of an intention to bind the husband's estate, after his death, to the payments of alimony therein specified. Despite such a *396 provision, the court "necessarily must determine what was the intention of the parties as evidenced by the stipulation which was subsequently incorporated in the divorce decree." Mullen v. Mullen, Iowa 1955, 69 N.W.2d 420, 423.
Thus, in the following cases, under the noted contractual and or decree provisions, it was held that the parties and the court intended that the husband's estate should be bound after his death to pay to the wife the alimony specified therein: Storey v. Storey, 125 Ill. 608, 18 N.E. 329, 1 L.R.A. 320 (for so long as she may be and remain sole and unmarried); In re Mesmer's Estate, 1928, 94 Cal. App. 97, 270 P. 732 (during her lifetime or until she remarries); Parker v. Parker, 193 Cal. 478, 225 P. 447 (during the remainder of her natural life); Ramsay v. Sims, 1952, 209 Ga. 228, 71 S.E.2d 639 (for her natural life or until she remarries). But the following cases construed the agreement and decree as not intending to so provide: In re Porter's Estate, Sur., 137 N.Y.S.2d 271 (during her lifetime); In re Estate of Kuchenbecker, 1955, 4 Ill. App.2d 314, 124 N.E.2d 52 (during the remainder of her natural life or until she remarries); Mullen v. Mullen, supra, 69 N.W.2d 420 (so long as she shall live); Billow v. Billow, 1953, 97 Ohio App. 277, 125 N.E.2d 558 (until her death or remarriage); Foster v. Foster, 1953, 195 Va. 102, 77 S.E.2d 471, 39 A.L.R.2d 1397 (until her death or remarriage).
In each of the cases first above cited, upholding the right of the wife to recover against the estate of her deceased husband, it was shown that the wife released a legal or equitable property right, In re Mesmer's Estate, supra; Ramsay v. Sims, supra, or that the payments were secured by a trust deed or bond or lien upon the husband's property. Storey v. Storey, supra; Parker v. Parker, supra.
In the instant case, the agreement does not clearly disclose that the wife released a valuable property right nor that she had any special equity in her husband's business or property. Construing the language used in the agreement and the decree in accordance with its usual meaning, it appears that the weekly payments were intended as "alimony" in its strictest sense, meaning "nourishment" or "sustenance," arising out of the husband's common-law obligation to support his wife and child. Cf. Jacobs v. Jacobs, Fla. 1951, 50 So.2d 169. This being so, we will not infer that the parties and the court intended the payments to extend beyond the death of the husband and to be binding upon his estate, as against the general rule that such payments cease upon his death. Our judgment is reinforced by the fact that, in the agreement, the wife released any right to property which the husband might acquire in the future  thus, in effect, waiving any rights she might have to share in his estate. For all that appears, the parties contemplated simply that the weekly payments would be paid out of the husband's salary or earnings; and these would, of course, cease upon his death. Cf. In re Porter's Estate, supra, 137 N.Y.S.2d 271.
An examination of the opinions in the two Florida cases which it is insisted are in point, i.e., Underwood v. Underwood, Fla. 1953, 64 So.2d 281, and Allen v. Allen, 111 Fla. 733, 150 So. 237, discloses that in each of said cases there was a clear, unambiguous convenant or agreement on the part of the husband to bind his personal representative after his death. It is our conclusion that the general rule to the effect that "the obligation to pay alimony dies with the person" should not give way in a case of this type which discloses no independent equities in favor of the erstwhile wife, unless by the terms and covenants of the separation agreement the husband, by express language which admits of no doubt, makes his obligation binding upon his estate.
We do not decide, since the question is not presented, whether an award of this *397 type of "pure" alimony could be made by the court to extend beyond the lifetime of the husband, in the absence of an agreement of the parties to that effect. There is no statute in this state so providing; and it has been said that "generally such power is considered as not existent, in the absence of any statute or agreement between the parties." See the statement of the annotator in 39 A.L.R.2d at page 1409, and cases cited.
While the Chancellor did not specify in his order the reasons for granting the Ancillary Administrator's motion to dismiss, his order may be sustained on the ground, alleged in the motion to dismiss, that Mrs. Johnson's petition failed to state a claim on which relief could be granted, for the reasons stated above.
It is not necessary, then, to decide the question of whether the court had jurisdiction of the petition, as argued here by the parties. It might be noted, however, that Guinta v. Lo Re, 1947, 159 Fla. 448, 31 So.2d 704, 705, is ample authority for the court's exercise of jurisdiction in a matter of this kind. It was there held that a suit by minor children for an adjudication of their right to enforce against the estate of their deceased father a claim for past and future installments of support money theretofore awarded in a divorce decree "should be treated as supplemental to the original suit for divorce * * *." Nor would the fact that the proceedings may have been instituted in the equity court prior to filing a claim in the Probate Court deprive the equity court of jurisdiction, provided, of course, that the equity proceedings were filed and service of process had upon the personal representative of the decedent's estate within the eight-month period prescribed by the statute. Section 733.16, Fla. Stat. 1955, F.S.A.
The other question argued has been considered, and in my opinion no error has been found.
For the reasons stated, we think the petition for certiorari should be denied and therefore respectfully dissent.
DREW, J., concurs.

On Petition for Rehearing
PER CURIAM.
By petition for rehearing appellee Every appears to be of the view that we have in some fashion receded from our precedents holding that the obligation to pay alimony dies with the divorced husband absent a specific contractual or decretal provision to the contrary.
We do not so construe the opinion. We here merely held that there was a contractual and decretal provision sufficiently definite and specific to impress the estate with the obligation assumed by the divorced husband until the death or remarriage of his former spouse. As so understood we fail to foresee the dire consequences suggested by the petition.
The petition for rehearing is denied.
TERRELL, C.J., and THOMAS, THORNAL and O'CONNELL, JJ., concur.
HOBSON, ROBERTS and DREW, JJ., dissent.
DREW, Justice (dissenting).
I agree that the majority opinion is not in conflict with nor does it recede from the precedents of this court which hold that the obligation to pay alimony dies with the divorced husband in the absence of a specific contractual or decretal provision to the contrary. I am still of the view, however, that the majority opinion was in error in holding that the contract or decree in this case was sufficiently definite to warrant a charge against the husband's estate.
HOBSON and ROBERTS, JJ., concur.