ALLEN, Chief Judge.
Edna B. Hazlewood, the appellant, who was the defendant below, appeals from a final decree in favor of Mary G. Hazle-wood, plaintiff below and appellee here.
The appellant, Edna B. Hazlewood, is the Executrix of the Estate of Frederick W. Hazlewood and the widow of the deceased. Mary G. Hazlewood, the appellee, is the former wife of the deceased.
In March of 1946, Mary G. Hazlewood and her then husband, Frederick W. Hazle-wood, entered into an agreement whereby he agreed to pay the sum of $75 per month for her support and maintenance during her life or until she remarried.
On April 1, 1946, a Nevada court entered a final decree of divorce that incorporated by reference the separation agreement and ordered payments “until the death or remarriage of said defendant.” Frederick W. Hazlewood died March 28, 1965, having complied with the terms of the separation agreement and divorce up until that time. No payment has been made since that time and after the Executrix rejected the claim of the appellee for the monthly payments that had accrued, appellee brought suit in the circuit court for the sums then due, etc.
The laws of Nevada provide in Section 125.150(4), Revised Statutes:
“In the event of the death of either party or the subsequent remarriage of the wife, all alimony awarded by the decree shall cease unless it shall have been otherwise ordered by the court.”
The chancellor below stated that the Nevada statute would be applicable if the Nevada court had awarded alimony. The chancellor found that in the absence of the word “alimony” and an independent award separate and apart from the provision in the separation agreement, the Nevada decree did not award alimony. The chancellor concluded that this cause was controlled by the decision of our Supreme Court in Johnson v. Every, Fla.1957, 93 So.2d 390, wherein it was stated:
“ * * * in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband’s liability for alimony terminates with his death. On the other hand, where the decree or property settlement agreement expressly provides for the continuance of the payments ‘until the death of the wife’ then the husband’s estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death.”
The agreement between the parties provides, among other things, the following:
“1. The party of the first part, Frederick W. Hazlewood, agrees that he shall pay to the party of the second part, Mary G. Hazlewood, the sum of Seventy Five ($75.00) Dollars per month for the support and maintenance of the party of the second part. Such payments shall continue during the life of the party of the second part or until she remarries, whichever event first occurs. Such payments shall commence on the 1st day of the month following the approval of this agreement and its confirmation and adoption by the Second Judicial District Court of the State of Nevada in and for the County of Washoe, wherein an action for divorce is now pending between the parties hereto.”
The agreement further provides for attorneys’ fees for the law firms representing both parties in the divorce case, providing that the fees to them should be paid out of the one-half interest in the real property to be deeded to the party of the second part (wife).
The agreement makes certain agreements with relation to real property located in *754 New York, the home of the wife;, a provision that when the settlement agreement was approved, confirmed and adopted by the District Court of Nevada the wife would discontinue and dismiss with prejudice any and all actions which had been brought by her in the State of New York or elsewhere against her husband; and many other ancillary provisions.
Paragraph 11 of the agreement provides:
“This agreement shall first be executed by the husband, Frederick W. Hazlewood, and shall be of no force and effect until executed by the wife, Mary G. Hazlewood, and further, upon submission and approval, adoption and confirmation by the Second Judicial District Court of the State of Nevada in and for the County of Washoe. Until so approved, confirmed and adopted, this agreement shall be null and void and of no force and effect, but upon such approval, confirmation and adoption of a full, true and correct copy of the original of this agreement, each, every and all the terms hereof shall have full force and effect and shall be binding upon the parties hereto from the date of such approval, confirmation and adoption until the end of the world.”
The decree of the Nevada court, apparently filed April 12, 1946, provided:
“That the parties herein entered into a written agreement under date of March 26, 1946, following the filing of this action, which agreement settles all of the property rights of the plaintiff and defendant, and provides for the support of the defendant; that at the time of the execution of said agreement, both plaintiff and defendant had the advice of counsel of their own selection; that said agreement is fair, just and equitable; that a full, true and correct copy of said agreement. has been offered in evidence and admitted as defendant’s Exhibit 1, and submitted to the Court for its approval, confirmation and adoption.
«* * *
“That said agreement in writing, dated March 26, 1946, settling all and singular the respective property rights of the parties, and all matters pertaining to the support of the defendant, a full, true and correct copy of said agreement having been admitted in evidence in this action, and marked and designated as defendant’s Exhibit 1, should be by this Court ratified, confirmed, approved and fully adopted in all respects, and the plaintiff and defendant should be ordered and directed to comply with all the terms and conditions of said agreement, and that judgment should be entered in favor of the defendant and against the plaintiff in accordance with the terms and provisions of said agreement.”
Further, in the decree part of the judge’s final decree, it is stated that the written agreement has settled all the property rights existing between the parties; that the sum of $75 per month be paid by the -plaintiff-husband until the death or remarriage of the defendant; that the court has filed in evidence a true copy of the agreement designated as defendant’s Exhibit 1; and that it is approved and adopted as a part of the judgment and incorporated by specific reference as if set forth in the judgment in full. Each of the parties was then ordered to comply with the terms thereof.
The last paragraph of the final decree provided that there should be no reservation of jurisdiction to modify, alter or change the terms of the agreement, and that Frederick W. Hazlewood should pay to Mary G. Hazlewood the sum of $75 per month, commencing on the 1st day of April, 1946, and on the first day of each and every succeeding month thereafter until the death or remarriage of said defendant. ' ■ ■
The factual situation in Johnson v. Every, Fla.1957, 93 So.2d 390, referred to *755 by the able chancellor of the court below in his opinion, is very similar to the instant case with the exception that the divorce decree was entered in Florida, whereas in the instant case it was entered in Nevada. We do not see that the difference is of any importance.
As heretofore stated, Section 125.150(4), Nevada Revised Statutes, provides:
“In the event of the death of either party or the subsequent remarriage of the wife, all alimony awarded by the decree shall cease unless it shall have been otherwise ordered by the court.”
This statute is the same as the law of Florida. For instance, as expressed in Johnson v. Every, supra:
“We subscribe to the proposition that in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband’s liability for alimony terminates with his death. On the other hand, where the decree or property settlement agreement expressly provides for the continuance of the payments ‘until the death of the wife’ then the husband’s estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death. Here there was a provision in the final decree as well as in the property settlement arrangement to the effect that the payments would be made during the life of the wife or until she remarried. She is still living and she has not remarried, and consequently, the conditions for the termination of the weekly payments have not occurred.”
In Johnson v. Every, supra, our Supreme Court further said:
“Appellant contends that the final decree of divorce as well as the property settlement agreement provided that the payments should be made to her during her lifetime and so long as she remained unmarried and that such a decree and agreement can be enforced against the estate.
“Appellee contends that the responsibility for the payment of alimony died with the husband and a claim therefor is not enforceable against his estate.
“Although the property settlement agreement was not incorporated in the final decree, the essential aspects thereof were for all practical purposes made a part of the decree. In addition to the provisions recited above, the agreement provided that the wife and husband mutually released the interest of each other in the respective estates of each other. In other words, in exchange for the weekly payments for support and maintenance and other considerations, the appellant-wife surrendered any and all claim she might have against her husband’s estate. It should be noted that the property settlement agreement was executed two years before the divorce decree. Both by the agreement and by the decree, it was expressly provided that the weekly payments would be terminated only by the death of the wife or her remarriage to someone other than her former husband.”
In Johnson v. Every, supra, three of the Supreme Court Justices dissented on certain features of the case, but on the petition for rehearing the majority of the Court stated:
“By petition for rehearing appellee Every appears to be of the view that we have in some fashion receded from our precedents holding that the obligation to pay alimony dies with the divorced husband absent a specific contractual or decretal provision to the contrary.
“We do not so construe the opinion. We here merely held that there was a contractual and decretal provision sufficiently definite and specific to impress the estate with the obligation assumed by the divorced husband until the death *756 or remarriage of his former spouse. As so understood we fail to foresee the dire consequences suggested by the petition.”
In Underwood v. Underwood, Fla.1953, 64 So.2d 281, 283, the Separation Agreement, which was attached to the Master’s report, provided in part:
“2. As and for alimony and in full and complete satisfaction of the husband’s obligation to maintain and support the wife, the husband agrees to pay, or to cause to be paid, to the wife, * * * as and for the alimony and support of the wife for and during the remainder of her life. If the husband shall die before the wife, the said monthly payments shall not cease but the payment thereof shall be a first charge and lien against the estate of the husband, * *
Subsequently, in the lower court, there were certain basic changes made and when the Underwood case came before the Supreme Court, it said:
“At the very outset we dispose of the legal effect of the use of the word ‘alimony’ in the agreement and decree. It is not what it is called but what it is that fixes its legal status. It is the substance and not the form which is controlling. In the case of International Trust Co. v. Liebhardt, 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700, the court held that the use of the word alimony was not conclusive and that it was substance and not form which guided the court. So far as agreements of the kind under consideration is concerned, where periodic payments are to be made the wife for the period of her life and is not limited to the j oint lives of the parties, the legal effect of such payments are that they constitute property settlements and not alimony. By its very nature, alimony is limited to the lifetime of the husband. * * * ” At 64 So.2d 288.
In Aldrich v. Aldrich, Fla.1964, 163 So.2d 276, 278, our Supreme Court, in an opinion by Mr. Justice Roberts on the certification of a question of law to the Supreme Court of Florida by the United States Supreme Court, said:
“Similarly, predicated on the common-law rule that the obligation of the husband to support his wife ended at his death, it has been uniformly held by this court that his obligation to pay alimony ceases at his death unless he agrees that his estate is to be bound after his death for such payments. See Allen v. Allen, 111 Fla. 733, 150 So. 237; Underwood v. Underwood, Fla.1953, 64 So.2d 281. The decisions from other jurisdictions cited in the Underwood case in support of the statement, ‘By its very nature, alimony is limited to the lifetime of the husband’, are significant. Thus, in North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061, the court was concerned with the question of whether a monthly allowance awarded to the wife by the divorce decree was an award of alimony or an approval of the contractual obligation assumed by the husband. The court said:
“ ‘The provision in the decree awarding the wife $500 per month to continue so long as she remained single and unmarried (the same as that provided in the contract between the parties) justifies the conclusion that the decree was an approval of ■ the contract, and not an award of alimony, because the court had no authority to make an award of alimony to continue so long as the wife remained single and tmmarried but did have authority to approve a contract between the parties containing that provision.’ (Emphasis added.)
“And in Dickey v. Dickey (1928) 154 Md. 675, 141 A. 387, 58 A.L.R. 634, also cited in the Underwood case, where the decree incorporated an *757 agreement between the parties and ordered the husband to pay a weekly sum to the wife ‘as permanent alimony until her death or remarriage,’ the appellate court said that permanent alimony is a provision for the wife’s support ‘that continues only during their joint lives or so long as they live separate and apart’, and pointed out that it would have been impossible for the Chancellor to have allowed ‘permanent alimony’ as the decree provided, in the absence of the agreement between the parties specifically so providing.”
We hold that the decree of the Nevada court did not order alimony but was, in effect, an approval of the property settlement made between the parties. We affirm the lower court.
Affirmed.
SMITH, J., and KELLY, CLIFTON, Associate Judge, concur.