ALDERMAN, Chief Judge.
The determinative issue in this appeal is whether a written separation agreement between Joseph E. O’Malley and Iva C. O’Malley, his former wife, is sufficient to obligate Mr. O’Malley’s estate to continue alimony payments after his death. The trial court concluded that the agreement was sufficient and held Mr. O’Malley’s estate liable for continued alimony payments. We reach a contrary conclusion and reverse.
When Mr. and Mrs. O’Malley were divorced, the judgment incorporated by reference their written separation agreement. The agreement provided: “Husband agrees to pay unto Wife as and for permanent alimony the sum of eight hundred fifty and no/100 dollars ($850.00) per month beginning March 1,1972, and monthly thereafter until Wife becomes remarried or deceased.” Mr. O’Malley subsequently died, survived by Mrs. O’Malley, who has not remarried. She filed a claim against his estate for continued alimony. When the estate denied her claim she began a proceeding to enforce her claim, resulting in the judgments which are the subject of this appeal.
The trial court specifically found, and we agree, that the periodic payments called for in the agreement are alimony and not an integral part of a settlement of property rights between the parties. That is to say, the word “alimony” in the agreement is used in its technical sense to refer to the “nourishment” or “sustenance” which a husband may be compelled to pay his wife for her maintenance when he is living apart from her or when they are divorced. Aldrich v. Aldrich, 163 So.2d 276 (Fla.1964).
An obligation to pay alimony ordinarily dies with the person who has the obligation, but he may agree to bind his estate to continue alimony payments after his death. Allen v. Allen, 111 Fla. 733, 150 So. 237 (1933). In the present case, the trial court found that Mr. O’Malley’s intent to bind his estate, although not expressed, was implied in the language of the separation agreement quoted above. We disagree. If Mr. O’Malley had intended to obligate his estate for alimony payments after his death, it would have been a simple matter for him to have expressly said so.
The trial court’s error arises from its reliance upon Johnson v. Every, 93 So.2d 390 (Fla.1957). In Johnson, the Supreme Court stated that the point for determination was “. . . whether under the facts shown by this record a former wife can assert a claim for unmatured alimony against the estate of her deceased former husband.” (Original emphasis.) An agreement of the parties and the divorce decree provided for alimony payments that “shall cease upon the death of the plaintiff . or upon her remarriage to any person other than the defendant.” A majority of the court reversed an order dismissing the former wife’s petition for continued alimony. However, the court specifically stated that it was not receding from its prior holding that the obligation to pay alimony dies with the divorced husband absent a specific contractual or decretal provision to the contrary.
In a later case, the Supreme Court again stated that it did not intend to recede from the rule that liability for alimony terminates with the death of the husband unless he “assumes the obligation” as one payable out of his estate after his death. Aldrich v. Aldrich, supra at page 280. In Aldrich, the court held that “alimony” in its technical sense — the “nourishment” or “sustenance” of the wife — may not continue as a charge against the husband’s estate during the lifetime of the wife, unless the husband agreed that his estate be so bound.
In a still later case, the Supreme Court considered a final decree which incorporated the terms of an agreement providing for alimony “. . . during the remainder of the life of the plaintiff, or until the remarriage of the plaintiff . . . ” In re Es *858 tate of Freeland, 182 So.2d 425 (Fla.1965). The issue was whether there was an agreement between the parties which evidenced the intention of the husband to obligate his estate to continue alimony after his death. The court found that there was no such agreement and again noted that it had not receded from existing precedent respecting the obligation for alimony after the husband’s death.
This court has also recently held that a court of equity has no authority, statutory or inherent, to order the continuation of alimony after the death of the husband absent his express agreement that his estate be so bound. Bunn v. Bunn, 311 So.2d 387 (Fla. 4th DCA 1975).
We cannot reconcile the apparent conflict between Johnson v. Every, supra, and the other cases cited in this opinion. We conclude that Johnson has in effect, although not expressly, been overruled; or alternatively, if Johnson has not been overruled, it has little precedential value and its holding is limited to the facts shown by the record in that case.
Turning now to the merits of the present case, we hold that the property settlement agreement between Mr. and Mrs. O’Malley is not sufficiently specific to obligate Mr. O’Malley’s estate to continue alimony payments after his death. The language in question is similar to that commonly used in separation agreements and divorce judgments to indicate that the alimony is permanent, rather than temporary. We conclude that, absent an express agreement that the estate be so bound, the trial court had no authority to order Mr. O’Mal-ley’s estate to continue payments of alimony after his death. Such an agreement may not be implied from a provision which simply recites that alimony will be paid to Mrs. O’Malley until she “becomes remarried or deceased.” Without doubt, it was within the power of the parties to contract for alimony after the husband’s death; they needed only state their agreement with sufficient definiteness. They did not do so, and Mrs. O’Malley cannot now rely upon the court to imply what she and her husband might have agreed to.
Having reached this conclusion we need not discuss the other issues raised by appellant and by appellee on her cross-appeal.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
CROSS, J., dissents, with opinion.