163 So.2d 276 (1964)
Marguerite Loretta ALDRICH, Petitioner,
v.
William T. ALDRICH et al., Respondents.
No. 33138.
Supreme Court of Florida.
April 22, 1964.
*277 Lane, French, Primm, Lane & Carrier, Miami, and Herman D. Rollins, Charleston, W. Va., for petitioner.
Charles M. Love, Ernest H. Gilbert of Dayton, Campbell & Love, Charleston, W. Va., for respondents.
James E. Joanos, of Dye, Tucker & Joanos, Tallahassee, amicus curiae.
ROBERTS, Justice.
We here consider four questions of state law certified by the Supreme Court of the United States to this court for decision as authorized by Section 25.031 Florida Statutes, F.S.A., Florida Appellate Rule 4.61, 31 Florida Statutes, 31 F.S.A., and our decision in Sun Insurance Office, Limited v. Clay, Fla., 133 So.2d 735. That Court acted in response to a petition for writ of certiorari to the Supreme Court of Appeals of the State of West Virginia in Aldrich v. Aldrich, 375 U.S. 249, 84 S.Ct. 305, 11 L.Ed.2d 304. We appreciate the courtesy of the Supreme Court of the United States in allowing this court to participate in the settling of an important principle of state jurisprudence.
The petitioner, Marguerite Loretta Aldrich, filed suit for and was granted a divorce from her husband, M.S. Aldrich (now deceased), in the Circuit Court of Dade County, Florida, in 1945. The final decree awarded her $250.00 per month as "permanent alimony" and provided that such monthly sum should be a charge against the husband's estate during her lifetime, in the event he pre-deceased her. No reference was made in the decree as to an agreement between the parties settling their property rights or stipulating for the payment of alimony from the estate of the husband after his death. The original case was not appealed, and we do not have the record of the divorce proceeding before us. It is, however, stated by the Supreme Court of the United States in its opinion, supra, that "There was no prior express agreement between the parties that the estate would be bound." No appeal was taken by either party from the final decree.
M.S. Aldrich ("the husband" hereafter) died testate, a resident of Putnam County, West Virginia, in 1958. He was not in default in the payments of alimony to his former wife ("the petitioner" hereafter) at the time of his death. His will, naming his second wife and his son as the sole beneficiaries of his estate, was duly admitted to probate. The petitioner filed the instant suit to recover the amount of unpaid alimony accrued since the date of the death of the husband and the date of the institution of her suit. The trial court held that the provisions of the divorce decree purporting to bind the estate of the husband for the payment of the alimony accruing after his death were "invalid and unenforceable" and entered summary judgment for the defendants. On appeal to the Supreme Court of Appeals of West Virginia, the decree of the lower court was affirmed by a majority of the court. Aldrich v. Aldrich, W. Va. 1962, 127 S.E.2d 385.
Thereupon, the petitioner applied to the Supreme Court of the United States for review, on certiorari, of the appellate court's decision on the basis of the "full faith and credit" clause of the federal constitution, Sec. 1, Article IV. As noted, the Supreme Court has certified to us for decision four questions of law arising out of the controversy. They are as follows:
1. Is a decree of alimony that purports to bind the estate of a deceased husband permissible, in the absence of an express prior agreement between the two spouses authorizing or contemplating such a decree?
2. If such a decree is not permissible, does the error of the court entering it render that court without subject matter jurisdiction with regard to that aspect of the cause?

*278 3. If subject matter jurisdiction is thus lacking, may that defect be challenged in Florida, after the time for appellate review has expired (i) by the representatives of the estate of the deceased husband or (ii) by persons to whom the deceased husband has allegedly transferred part of his property without consideration?
4. If the decree is impermissible but not subject to such attack in Florida for lack of subject matter jurisdiction by those mentioned in subparagraph 3, may an attack be successfully based on this error of law in the rendition of the decree?
The first question is answered in the negative, with the understanding that "alimony" is used in its technical sense as the "nourishment" or "sustenance" which a husband may be compelled to pay his wife for her maintenance when living apart from her or when she obtains a divorce from him. See Jacobs v. Jacobs, Fla. 1951, 50 So.2d 169. This type of permanent alimony was provided for in the statute (enacted October 31, 1828) which first authorized divorces in this state. It was obviously included as a necessary concomitant thereto as a social necessity to prevent the wife from becoming a public charge or an object of charity. It is the statutory equivalent of the common-law obligation of the husband to provide the day-to-day necessities of life  food, clothing, habitation, and the like  to his wife during their coverture and joint lives. See Floyd v. Floyd, 91 Fla. 910, 108 So. 896. As stated in the early case of Phelan v. Phelan, 12 Fla. 449:
"Permanent alimony is not a sum of money or a specific proportion of the husband's estate given absolutely to the wife. It is a continuous allotment of sums payable at regular periods for her support from year to year."
This original concept of alimony as a periodic payment from year to year in accordance with the needs of the former wife and the ability of the former husband to pay, which could be modified by the court to meet a change in either circumstance, was consistently adhered to by this court, despite efforts by lower courts to broaden it  until, in 1947, the Legislature amended Section 65.08 to provide for periodic payments of alimony or payment "in a lump sum". Ch. 23894, Laws of Florida, Acts of 1947. Because of the strict construction of the statute, as amended, as precluding an award of both periodic and lump-sum alimony, see Ehrlich v. Ehrlich, Fla.App. 1961, 130 So.2d 630, and cases cited, the Legislature again intervened and amended Section 65.08 by adding the words "or both", so that a lump-sum award of alimony may now be joined with a periodic-payment award. Ch. 63-145, Laws of 1963.
Relevant here, also, as illustrative of this court's interpretation of Ch. 65, Fla. Stat., F.S.A., in accordance with the common-law principles respecting the obligation of the husband and father to his wife and children, are the decisions respecting the liability of the father towards the children of his former marriage. See Guinta v. Lo Re, 1947, 159 Fla. 448, 31 So.2d 704; Flagler v. Flagler, Fla. 1957, 94 So.2d 592; and Simpson v. Simpson, Fla.App. 1959, 108 So.2d 632. As stated in the Simpson case,
"Predicated on the common law is the rule that a father is under no legal responsibility to provide for the support of his minor children subsequent to his death. Florida has, by divided court, aligned herself with other jurisdictions which have subscribed to the principle, in cases where no agreement is involved, that upon the death of a father who has been ordered to make payments for the support of a child, the order terminates as to payments which would have accrued subsequent to his death."
Similarly, predicated on the common-law rule that the obligation of the husband to support his wife ended at his death, it has been uniformly held by this court that his obligation to pay alimony ceases at his death *279 unless he agrees that his estate is to be bound after his death for such payments. See Allen v. Allen, 111 Fla. 733, 150 So. 237; Underwood v. Underwood, Fla. 1953, 64 So.2d 281. The decisions from other jurisdictions cited in the Underwood case in support of the statement, "By its very nature, alimony is limited to the lifetime of the husband", are significant. Thus, in North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061, the court was concerned with the question of whether a monthly allowance awarded to the wife by the divorce decree was an award of alimony or an approval of the contractual obligation assumed by the husband. The court said:
"The provision in the decree awarding the wife $500 per month to continue so long as she remained single and unmarried (the same as that provided in the contract between the parties) justifies the conclusion that the decree was an approval of the contract, and not an award of alimony, because the court had no authority to make an award of alimony to continue so long as the wife remained single and unmarried but did have authority to approve a contract between the parties containing that provision." (Emphasis added.)
And in Dickey v. Dickey (1928) 154 Md. 675, 141 A. 387, 58 A.L.R. 634, also cited in the Underwood case, where the decree incorporated an agreement between the parties and ordered the husband to pay a weekly sum to the wife "as permanent alimony until her death or remarriage," the appellate court said that permanent alimony is a provision for the wife's support "that continues only during their joint lives or so long as they live separate and apart", and pointed out that it would have been impossible for the Chancellor to have allowed "permanent alimony" as the decree provided, in the absence of the agreement between the parties specifically so providing.
The decisions of this and other courts, referred to above, are in accord with the great weight of authority that, in the absence of statute or agreement between the parties, it is not ordinarily permissible for a court to provide in its decree that alimony payments shall continue to accrue after the death of the ex-husband and be payable out of his estate. See the cases collected in the annotation in 39 A.L.R.2d 1406 et seq. It is contended on behalf of the petitioner, however, that this court has aligned itself with the minority in holding that a court does have the power to bind the estate of the deceased ex-husband for alimony after his death, even though he does not agree that his estate is to be so bound. Johnson v. Every, Fla. 1957, 93 So.2d 390, is relied upon in support of the contention. In that case the ex-wife sought to collect from her deceased former husband's estate a claim for alimony accruing after his death. The divorce decree had awarded her a weekly sum for support and maintenance and had provided that the payment thereof "shall cease, upon the death of the plaintiff * * * or upon her remarriage to any person other than the defendant." A property settlement agreement between the parties, executed some two years prior to the divorce, was not referred to by the decree but "the essential aspects thereof were for all practical purposes made a part of the decree", said this court. In holding that the trial court erred in dismissing the ex-wife's petition, with prejudice, it was said in the majority opinion:
"We subscribe to the proposition that in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband's liability for alimony terminates with his death. On the other hand, where the decree or property settlement agreement expressly provides for the continuance of the payments `until the death of the wife' then the husband's estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death." (Emphasis added.)
*280 Counsel for petitioner argue that, by the use of the disjunctive "or", this court "clearly expressed the rule that alimony may be granted in two ways: First, by a property settlement between parties containing a provision for alimony; and, second, by a judicial decree to this effect."
A careful analysis of the opinion reveals that this argument is unsound. In the first place, the only issue before the court, insofar as the question of the enforceability against the deceased husband's estate of the alimony decree was concerned, was whether the husband, by his agreement, intended to so bind his estate. The majority of the court held that he did. A minority held that such an intention was not clearly expressed in the agreement. In the second place, any doubt as to the true holding of the majority is dispelled by the language of the order denying the petition for rehearing. The majority stated that their opinion was not to be construed as receding from our precedents respecting the obligation for alimony after the death of the husband and said that they "merely held that there was a contractual and decretal provision sufficiently definite and specific to impress the estate with the obligation assumed by the divorced husband * * *." (Emphasis added.) It is entirely clear, therefore, that the majority did not intend to recede from the rule of Allen v. Allen, supra, that the liability for alimony terminates with the death of the husband unless he "assumes the obligation" as one payable out of his estate after his death. The opinion of the majority in Johnson v. Every has been so interpreted by other courts. See Deigaard v. Deigaard, Fla.App. 1959, 114 So.2d 516; Gessler v. Gessler (C.A. 5) 273 F.2d 302.
We therefore hold expressly what has been impliedly held by our decisions, supra, respecting this matter, and that is, that there is nothing in Ch. 65, Fla. Stat., F.S.A., or any other statute of this state that authorizes a trial judge to decree that "alimony" in its technical sense  the "nourishment" or "sustenance" of the wife  may continue as a charge against the deceased ex-husband's estate during the lifetime of the wife, unless the husband has stipulated or agreed that his estate may be so bound. To hold otherwise would, in our opinion, be judicial legislation  and this we are not authorized to do. Cf. Flagler v. Flagler, supra, 94 So.2d 592, in which this court held that, despite the strong argument that "social justice" required that the father's liability for child-support payments ordered in a divorce decree should survive his death and be payable from his estate, we were not authorized "to change the law simply because the law seems to us to be inadequate in some particular case."
Nor do we conceive that there is any sound basis for granting such a preference to the ex-wife  which is, perhaps, the reason for the absence of express legislative authority in this respect. In this state, as at common law, a wife's right to have the necessities of life provided by her husband ends with his death. Her only absolute right, upon his death, is her dower right; his estate is not liable for, and cannot be held open to provide, support for the widow during the remainder of her life or until her remarriage. And we agree with the Missouri court's statement in North v. North, supra, 339 Mo. 1226, 100 S.W.2d 582, that
"It is therefore difficult to see why the rights of a divorced wife should be greater than those she would have enjoyed had she not been divorced."
It is also contended on behalf of the petitioner that, even if our divorce statute, Ch. 65, Fla. Stat., F.S.A., cannot be interpreted as authorizing the trial court to decree alimony to continue beyond the life of the husband, the inherent powers of an equity court, constitutionally granted, are broad enough to justify such action by the Chancellor. This contention is also without merit.
Our circuit courts, under Sec. 11 of Article 5 of the Florida Constitution as it *281 existed in 1945, had jurisdiction of "all cases in equity". This was interpreted to mean "all cases in equity involving matters which were of exclusive equity jurisdiction under the common law * * *" In re Niernsee's Estate, 1941, 147 Fla. 388, 2 So.2d 737, and it was said in Gill v. Gill, 107 Fla. 588, 145 So. 758, that the matter of granting alimony is "inherently of equitable cognizance, and may be awarded at the discretion of the chancellor according to the facts of the particular case." It is also well settled that the wife's equitable rights to or special equities in property accumulated during the marriage may be adjudicated in a divorce proceeding. See Heath v. Heath, 103 Fla. 1071, 138 So. 796, 82 A.L.R. 537; Meloche v. Meloche, 101 Fla. 659, 133 So. 339, 140 So. 319; Ammer v. Ammer, 113 Fla. 368, 151 So. 711. But we do not construe these decisions as holding that the technical "alimony"  meaning nourishment and sustenance  was a matter of equitable cognizance at common law, since, as pointed out in the Gill case, "Under the common law, absolute divorce precluded the granting of alimony, as the duty of support no longer existed; neither had the wife a right of action against the husband to recover for her support." The import of these decisions is merely that, in a divorce proceeding, in order to do complete justice between the parties, the court may protect equitable rights in property, or otherwise, as far as possible. In Gill, the "equitable right" protected was the wife's right to recover damages for his tort against her which she was precluded from doing during coverture but which, upon the dissolution of the matrimonial bond, could equitably be adjudicated in her favor, even though she was found to be the guilty party in the divorce suit. As stated in Heath v. Heath, supra, 138 So. 796:
"Such an allowance is not alimony and should never be made in any case unless shown to be warranted by special facts and circumstances which support a finding of an equity in the husband's property arising in favor of the wife from contributions of funds and services made by her toward its accumulation over, above, and beyond the performance of ordinary marital duties toward the husband."
We hold, therefore, that an award of technical alimony is not a matter inherently of equitable cognizance and is to be awarded solely in compliance with the statutes expressly providing therefor. There being, then, no statutory authority for the award of alimony to continue beyond the life of the husband, in the absence of his agreeing that his estate is to be bound therefor, the first question is answered "No," and it was error for the Circuit Court in the original case to hold to the contrary.
The second question, "If such a decree is not permissible does the error of the court entering it render that court without subject matter jurisdiction with regard to that aspect of the cause?" must also be answered in the negative.
In Rushing v. Thompson's Executors, 20 Fla. 583, 596, it was declared:
"It is a well-settled rule that, jurisdiction being obtained over the person and the subject-matter, no error in its exercise can make the judgment void. The authority to decide being shown, it cannot be divested by being improperly or incorrectly employed."
And in Quigley v. Cremin, 1927, 94 Fla. 104, 113 So. 892, in which this court held that irregularities in the procedure culminating in the issuance of a tax deed would not render it void, it was said:
"This court, speaking through Mr. Justice WHITFIELD, has held that jurisdiction of the subject-matter of an action is a power to adjudge concerning the general question involved therein, and is not dependent upon the state of facts which may appear in a particular case or the ultimate existence of a good cause of action in the plaintiff therein. Want of jurisdiction of *282 the subject-matter is to be distinguished from an erroneous exercise of jurisdiction."
The decision in Einstein v. Davidson, 35 Fla. 342, 17 So. 563, where a default judgment was attacked by the administratrix of the defendant against whom it was entered, some three years after its entry, on the ground that it was entered without proof of damages, is of particular interest here. It was there said:
"The record shows that the defendant in the judgment here was personally served with summons in the cause, and, besides, that he entered an appearance therein. The circuit court had undoubted jurisdiction over the subject-matter, and of the parties to the suit. The judgment entered by the clerk was such a judgment as the clerk, under the law, had the power, under certain circumstances, to enter. Because he may have erred and acted irregularly in entering it without proofs, in strict legal form, of the account sued on, does not make it such an absolute nullity as that it can be accurately said of it that it is void. It may have been erroneous, and therefore voidable, but not absolutely void. [Citations] A judgment that is absolutely null and void  a mere brutum fulmen  can be set aside and stricken from the record, on motion, at any time, and may be collaterally assailed. 1 Freem. Judgm. § 98, and citations. But the judgment that is voidable only, because irregular or erroneous, must be moved against in time, by motion to vacate, or by resort to an appellate tribunal; otherwise it becomes an absolute verity, and passes beyond the control of the courts to disturb. Such, we think, was the case here. The judgment was acquiesced in by the original defendant therein for more than three years after its entry, without any assault upon its regularity or validity. It was too late, after his death, and more than four years after its entry, for his administratrix to question its validity, by motion, because of errors or irregularities in its entry. It had then passed beyond the control of the court in which it was rendered, to vacate, correct, or modify it because of errors and irregularities in its entry."
See also Johnson v. McKinnon, 1907, 54 Fla. 221, 45 So. 23, 25, 13 L.R.A.,N.S., 874, in which it was held that
"Where the decree is such a one as the court had jurisdiction to render, the presumptions are all in favor of its regularity and validity until vacated by some proper proceeding instituted directly for the purpose of correcting errors therein, and cannot be attacked collaterally."
The decree in question was not a mere brutum fulmen. The court had jurisdiction of the parties and of the subject matter  that is, the general question of divorce and alimony. It was such a decree as the Chancellor would have had the power, under the proper circumstances (that is, the consent or stipulation or agreement of the husband), to enter. It was not void on its face. Cf. Johnson v. Every, supra, 93 So.2d 390, where the same type of decree was before this court and it was held that the decree was not, as a matter of law, unenforceable against the estate of the deceased ex-husband so that it was error for the court to dismiss the petition filed by the wife against the administrator of the estate to collect the sums accrued under the decree after her ex-husband's death. Compare also § 65.08 Fla. Stat. as it existed in 1945,[1] F.S.A.
*283 Somewhat analogous here is the case of Gaffny v. Gaffny, 1937, 129 Fla. 172, 176 So. 68, in which a former husband, when cited for contempt for failure to pay alimony awarded to the wife in the divorce decree, filed in the contempt proceedings a petition for cancellation of the award on the ground that it was procured by fraud. In affirming the action of the trial court in denying the petition this court said:
"* * * it is clear that said final decree cannot be attacked and set aside as being invalid in any respect on a mere motion for a reduction or cancellation of the permanent alimony. The [husband] took no appeal from that decree within the time allowed by law, and paid alimony thereunder, apparently without objection, for a period of about seven months. Furthermore, the appellant's remarriage, and his petition to reduce the amount of permanent alimony, amount to an acknowledgement of the validity of the decree as originally rendered. If the alimony decree was procured by fraud and without proper notice to appellant, equity afforded him a remedy for the impeachment of said decree."
The Third District Court of Appeal, in Teply v. Key, Fla.App., 158 So.2d 549, has considered recently a case that is also analogous to the situation here. There, a petition was filed by the ex-husband, after the time for appeal had expired, for a modification of a divorce decree as to its provision for child support. In affirming the order denying the petition, the appellate court said:
"* * * the decree does not appear on its face to be void. The thrust of the appellant's argument here, as we understand it, is that the requirements of the decree for the support of the minor child, who is neither the natural nor adopted child of the appellant, are without legal basis. Without deciding that question, we conclude that it does not render the decree void although it may have been erroneous and subject to reversal on appeal. See 19 Fla.Jur., Judgments, § 228; also Klausner v. Ader, Fla.App. 1963, 156 So.2d 193."
In the Klausner case, the ex-wife foreclosed an equitable lien, which she claimed for unpaid separate maintenance awarded to her under a so-called "consent decree", against property owned by the parties jointly, service of process on the husband being had by publication only. In a proceeding in which the foreclosure decree was collaterally attacked, the court said:
"We need not inquire into whether the final decree in the foreclosure proceeding was erroneous but only whether it was valid. A judgment which although erroneous is valid is not subject to collateral attack either in the state in which it is rendered or in other states, although it may be open to direct attack by further proceedings in the original action [e.g., appeal] or by independent proceedings in equity. Restatement, Judgments, § 11, comment b."
Here, the final decree in question was valid on its face; the husband did not appeal from the decree, he had remarried, and had paid the amounts specified therein without question for many years. He had, in effect, consented to its provisions respecting alimony, and we think that here, paraphrasing Einstein v. Davidson, supra, 35 Fla. 342, 17 So. 563, where the original defendant had acquiesced in the decree for so many years, it was "too late, after his death, and more than [fifteen] years after *284 its entry, for his [administrator] to question its validity, by motion, because of errors or irregularities in its entry."
We note, parenthetically, that a decree awarding technical alimony  that is, "nourishment" or "sustenance"  to the wife, even though based upon the stipulation or agreement of the parties as to the amount thereof, is subject to modification by the court when a change of circumstances is shown, under our statute expressly authorizing modification of such agreements. Sec. 65.15, Fla. Stat. (1963) F.S.A.[2] And it would seem that the equity court would have jurisdiction to modify a decree of divorce awarding alimony payable in installments, after the death of the husband, so as to grant a gross sum out of the estate of the deceased in lieu thereof. See Van Haltern v. Van Haltern (1958) 351 Mich. 286, 88 N.W.2d 485.

CONCLUSION
In summary, it is our opinion that the Circuit Court of Dade County in 1945 had "subject matter" jurisdiction of the cause and that, in exercising such jurisdiction, its decision as to alimony after the death of the husband was erroneous. It is our further view, however, that when the husband failed to take an appeal and give a reviewing court the opportunity to correct the error, the decree of the Circuit Court on such question passed into verity, became final, and is not now subject to collateral attack. Therefore, our answer to question 1 is "No" and to question 2 is "No." In view of such negative answers it becomes unnecessary to deal with questions 3 and 4.
DREW, C.J., and THORNAL, O'CONNELL and CALDWELL, JJ., concur.
*285 ERVIN, J., concurs in part and abstains in part with opinion.
THOMAS, J., dissents.
ERVIN, Justice (concurring in part and abstaining in part).
I concur with that part of the opinion answering question 2, but respectfully abstain from answering question 1. It is my view that the answer to question 2 is dispositive of the controlling question in the subject litigation and renders moot the others propounded.
NOTES
[1] "65.08 Alimony upon decree of divorce.  In every decree of divorce in a suit by the wife, the court shall make such orders touching the maintenance, alimony and suit money of the wife, or any allowance to be made to her, and if any, the security to be given for the same, as from the circumstances of the parties and nature of the case may be fit, equitable and just; but no alimony shall be granted to an adulterous wife."

This statute was amended by Chapter 23894, Laws of Florida 1947 by adding these words: "In any award of permanent alimony the court shall have jurisdiction to order periodic payments or payment in lump sum, or both, in its discretion." which amended statute is now in force.
[2] "65.15 Modification of alimony decrees; agreements, etc.  Whenever any husband and wife heretofore, or hereafter, shall have entered into any agreement providing for the payments for, or in lieu of, separate support, maintenance or alimony, whether in connection with any action for divorce or separate maintenance, or with any voluntary property settlement, or whenever any husband has pursuant to the decree of any court of competent jurisdiction been required to make to his wife any such payments, and the circumstances of the parties or the financial ability of the husband shall have been changed since the execution of such agreement, or the rendition of such decree, either party may apply to the circuit court of the circuit in which the parties, or either of them, shall have resided at the date of the execution of such agreement, or shall reside at the date of such application, or in which such agreement shall have been executed, or in which such decree shall have been rendered, for an order and judgment decreasing or increasing the amount of such separate support, maintenance or alimony, and the court, after giving both parties an opportunity to be heard, and to introduce evidence relevant to the issue, shall make such order and judgment as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the husband, decreasing or increasing or confirming the amount of separate support, maintenance or alimony provided for in such agreement, or in such decree.

"Thereafter the husband shall pay and be liable to pay the amount of separate support, maintenance or alimony directed in such order and judgment, and no other or further amount, and such agreement, or such decree, for the purpose of all actions or proceedings of every nature and wherever instituted, whether within or without this state, shall be deemed to be, and shall be, modified accordingly, and it shall be unlawful to commence, or cause to be commenced as party, or attorney, or agent, or otherwise, in behalf of either party in any court any action or proceeding otherwise than as herein provided, nor shall any court have jurisdiction to entertain any action or proceeding otherwise than as herein provided to enforce the recovery of separate support, maintenance or alimony otherwise than pursuant to such order and judgment.
"This section is declaratory of existing public policy and laws of this state, which is hereby affirmed and confirmed in conformance with the provisions hereof, and it shall be the duty of the judges of the circuit courts of this state to construe liberally the provisions hereof in order to effect the objects and purposes hereof and the public policy of the state as hereby declared."