CARROLL, Judge
(dissenting).
I respectfully dissent from the judgment of affirmance in this case.
The holding of the majority that this indefinite recital in the divorce decree that there was an agreement for “permanent alimony,” followed by the order in the decree for payment to the wife of $100 per month alimony “during the remainder of the life of the Plaintiff [wife], or until the remarriage of the Plaintiff,” is contrary to the established rule that alimony, even when labeled “permanent,” payable in installments, ceases on death of the husband unless there is clear evidence of his intent to bind his estate; and the rule that such payments may be a charge on his estate, if provided for in a property settlement as distinguished from alimony, and then only if the right to them is established by a clear and definite agreement to that effect. See Allen v. Allen, 111 Fla. 733, 150 So. 237; Underwood v. Underwood, Fla.1953, 64 So.2d 281; Johnson v. Every, Fla.1957, 93 So.2d 390; Aldrich v. Aldrich, Fla.1964, 163 So.2d 276.
There was no property settlement here. Byron B. Freeland married the appellee Helen Gratigny on June 14, 1937. They lived together only a few months. The divorce was granted on October 14, 1937, four months to the day after they married. The only reference to property in the divorce decree was to a Chevrolet automobile, *819 which the wife was allowed to retain and on which the husband was required to pay the balance owed. The wife enjoyed the alimony for some twenty-five years, until the husband died.
In my opinion all the wife had upon which to base her claim for continued alimony after the husband’s death was a recital by the court that there had been an agreement for “permanent alimony.” The fact that the decree ordered alimony paid monthly so long as the wife lived, could not serve as a substitute for a required clear showing of intent on the part of the husband to bind his estate to pay such alimony.
Since there was no property settlement, and therefore no agreement in connection with a property settlement for payment of sums to the wife after the husband’s death, the agreement referred to in the decree, such as it was, concerned alimony. Although in Underwood v. Underwood, supra, the Supreme Court saw no place for an agreement by a husband to pay alimony beyond his lifetime, except as an incident to a property settlement, made under conditions which render the agreement reasonable and operative, in the more recent case of Aldrich v. Aldrich, supra, the Court recognized that an agreement by a husband to pay alimony after his death, made entirely aside from any question of property settlement, but which is of sufficient definiteness to show clear intent to bind his estate would be effective.
In my opinion, however, the Court in this case has misconstrued and misinterpreted the contract and decree involved. First, no definite contract was shown, and no clear intent on the part of the husband to bind his estate was disclosed. Second, at the most the language in the decree was ambiguous and could not with any certainty be interpreted to amount to a finding or recitation by the court that the husband had evinced a clear intent to bind his estate to pay alimony. The majority accepted the appellee’s argument, with reference to the divorce decree, that the agreement to which the decree referred was an undertaking to pay monthly alimony “during the remainder of the life of the Plaintiff,” subject only to the condition of her earlier remarriage. I can not agree to that interpretation of the decree. The recitation in the decree relating to an agreement was as follows:
“ * * * and it further appearing that by consent of the parties and their solicitors of record an agreement has been reached, as hereinafter set forth, providing for payment of permanent alimony, solicitor’s fees to the Plaintiff’s attorneys and costs in said cause; íjí ij¿ft
Obviously that had reference to an informal agreement, for example one such as could have been worked out in a corridor of the court house or in a corner of the judge’s chambers while waiting to be heard. It does not state that any property settlement has been made, nor does it state that an agreement had been formally entered into. It implies the parties and their lawyers had gotten together some time before the hearing and reached, an agreement as to the amount of permanent alimony and attorney fees, and for payment of the costs. The clause in the recital portion of the decree, to the effect that the parties had reached an agreement “as hereinafter set forth,” can as well have referred to the amounts which the decree then fixed as it can be considered as having dictated the particular language in' which the court ordered the payments to be made. The fact that the chancellor, in implementing an agreement which had been reached to pay permanent alimony used the language which he did, for installments of alimony to be paid “each and every month thereafter during the remainder of the life of the plaintiff” should, in view of shortcomings of the agreement, be given no more meaning or effect than as indicating the means used by the court to grant “permanent” alimony. As such, the (permanent) alimony was. terminable on the husband’s d.eath. ■
*820 Moreover, in my opinion the decision in this case presents a new concept, that when there is an agreement for “permanent alimony” a decree which in recognition of such agreement grants alimony by providing it shall be paid during the remainder of the life of the wife will be effective after the husband’s death and bind his estate, unless the estate can show that the parties had agreed to the contrary. I feel that holding is wrong, and is contrary to the earlier cases.
For the reasons stated I would hold that the alimony in this case terminated at the death of the husband, and that the decree should be reversed.