182 So.2d 425 (1965)
In re ESTATE OF Byron B. FREELAND a/k/a B.B. Freeland, Deceased.
Nola Bradford SCOTT, Executrix of the Last Will and Testament of Byron B. Freeland, Deceased, Petitioner,
v.
Helen GRATIGNY, Respondent.
No. 33836.
Supreme Court of Florida.
October 13, 1965.
Rehearing Denied February 22, 1966.
Hendricks & Hendricks, Miami, for petitioner.
Hudson, McNutt, Campbell & Isom, Miami, for respondent.
CALDWELL, Justice.
Petitioner Scott, executrix of the Last Will and Testament of Byron B. Freeland, deceased, seeks review of a decision of the District Court of Appeal, Third District, affirming a summary judgment awarding respondent Gratigny $100 per month from the assets of the estate of Byron Freeland from the date of Freeland's death for so long as respondent shall live or remain unmarried.
The District Court certified the cause as one passing upon the question of great public interest "because it relates to a matter *426 which may have material bearing on many existing divorce decrees and on future divorce litigation as to alimony."
Petitioner and the decedent were divorced on October 14, 1937. The final decree of divorce provided in part as follows:
"* * * and it further appearing that by consent of the parties and their solicitors of record an agreement has been reached, as hereinafter set forth, providing for payment of permanent alimony * * *
"4. That alimony and support money to the Plaintiff, Mrs. Helen Gratigny Freeland, now Helen Gratigny, is hereby decreed to be paid by the Defendant in the amount of $500.00 cash upon the signing of this decree, and the further sum of $100.00 per month * * * during the remainder of the life of the Plaintiff, or until the remarriage of the Plaintiff * * *."
Alimony was paid in accordance with the decree until the death of Byron Freeland whereupon respondent filed a claim in the decedent's estate for payment under the above decree and petitioner filed her objection. The trial court entered its summary judgment for respondent and the District Court affirmed, 166 So.2d 816, Judge Carroll dissenting.
Our question for determination is whether there was a contract or an agreement between the parties, reflected by a clear decree of the chancellor, evidencing the intention of the husband to obligate his estate to continue the payment of alimony after his death.
The District Court held (1) the decree evidenced a sufficient agreement by the husband to pay permanent alimony and that in such a case the representative of the decedent's estate had no right to question the permanency of the award if the same was not contested by the husband during his lifetime and (2) "[U]nless it is specifically agreed to the contrary, payments to a wife which are described as permanent in nature will continue subsequent to the demise of the former husband, if she is not prevented by any other condition subsequent from collecting same."[1]
By weight of authority and in this state, alimony awarded by a chancellor terminates upon the death of either of the parties or upon the remarriage of the wife.[2] The exception to the general rule is allowed where there is a contract or an agreement clearly evidencing the intention of the husband to bind his estate to continue payments in the nature of alimony after his death. In the Underwood case,[3] in which post-demise payments were ordered, there was a separation agreement which provided:
"If the husband shall die before the wife, the said monthly payment shall not cease but the payment thereof shall be a first charge and lien against the estate of the husband, subordinate only to the expenses of his last illness and funeral expenses."
In the Johnson case,[4] awarding post-demise payments, there was a property settlement agreement prior to divorce which provided for weekly payments and stipulated that such payments would be made while the contract remained in force and "shall *427 only be terminated by the death of the party of the second part [the wife] * * *." This court, three justices dissenting, held:
"We subscribe to the proposition that in the absence of an express contract or a provision in a decree such as the one before us, a divorced husband's liability for alimony terminates with his death. On the other hand, where the decree of property settlement agreement expressly provides for the continuance of the payments `until the death of the wife' then the husband's estate remains liable for the obligation in the same manner as it is liable for any other legitimate obligation outstanding at the time of his death. Here there was a provision in the final decree as well as in the property settlement arrangement to the effect that the payments would be made during the life of the wife or until she remarried."
The Johnson case is discussed and construed in the Aldrich opinion[5] as not receding from our precedent respecting the obligation for alimony after the death of the husband.
In Aldrich, supra, a final decree of divorce awarded payments in the nature of alimony to the wife and provided expressly that such monthly sums should be a charge against the husband's estate during her lifetime, in the event he predeceased her. This court found that, although the decree was erroneous because the husband had not agreed his estate would be bound, the husband's failure to appeal allowed the decree to become final and not subject to collateral attack. We held:[6]
"We therefore hold expressly what has been impliedly held by our decisions, supra, respecting this matter, and that is, that there is nothing in Ch. 65, Fla. Stat., F.S.A., or any other statute of this state that authorizes a trial judge to decree that `alimony' in its technical sense  the `nourishment' or `sustenance' of the wife  may continue as a charge against the deceased ex-husband's estate during the lifetime of the wife, unless the husband has stipulated or agreed that his estate may be so bound. To hold otherwise would, in our opinion, be judicial legislation  and this we are not authorized to do."
But we cannot agree the Johnson, Underwood and Aldrich cases support the holding of the District Court herein. In this cause there was no agreement between the parties evidencing a clear intention that the estate of the deceased be bound to continue the payments awarded in the decree for divorce.
The petition for writ of certiorari is granted, the decision of the District Court of Appeal, Third District, is quashed and the cause remanded for further proceedings not inconsistent herewith.
THORNAL, C.J., DREW, J., and CULVER SMITH, Circuit Judge, concur.
THOMAS, J., dissents with opinion.
ROBERTS, J., dissents and agrees with THOMAS, J.
ERVIN, J., dissents.
THOMAS, Justice (dissenting).
The respondent, Helen Gratigny, and Byron B. Freeland were married in the year 1937 and four months afterward a divorce was granted at the suit of the respondent.
It was recited in the final decree, I will eventually elaborate, that an agreement had been reached providing for the payment of permanent alimony, consequently, it was *428 ordered that the husband pay to the wife alimony and support money in the amount of $100 monthly "during the remainder of the life of the Plaintiff [respondent here], or until the remarriage of the Plaintiff."
Byron B. Freeland complied scrupulously with the requirements of the decree until his death more than 25 years later. Then the respondent, who, meanwhile had not remarried, filed a claim against his estate asserting that the monthly payments should not cease upon his demise but only upon her death or remarriage.
The executrix of the estate of Byron B. Freeland rejected the claim and this suit followed. It was concluded by a summary judgment that the plaintiff recover from the estate of Byron B. Freeland the sum of $100 each month from the date of his death "so long as the plaintiff [respondent] shall live and remain unmarried."
The controversy next appeared in the District Court of Appeal, Third District, where it was held, one judge dissenting, that the circuit judge should be affirmed. The cause came here on a certificate of the District Court of Appeal pursuant to Sec. 4(b) of Article V of the Constitution, F.S.A.
The court recognized the general rule that alimony payments cease at the death of the deceased former husband, citing Allen v. Allen, 111 Fla. 733, 150 So. 237, where it was stated that "[a]s a general rule the obligation to pay alimony dies with the person * * *." (Italics supplied.) However, the court added: "but agreements of the husband to bind his representatives to do this have been upheld, and there is no prohibition against them in this state."
Likewise the District Court of Appeal, Third District, in Deigaard v. Deigaard, 114 So.2d 516, 517, commented that "generally" liability for alimony ended with the divorced husband's death and concluded that since in the case then under study there appeared no express agreement for post-demise payments, the decree providing for such was erroneous.
From an examination of the cited cases as well as Aldrich v. Aldrich, 163 So.2d 276, it appears that without agreement no obligation is put upon the deceased former husband's estate to continue alimony payments and the burden may not be imposed by court decree. The exception of responsibility of an estate for alimony payments of the husband seems to be limited to those instances when there has been agreement on the part of the husband to that effect.
The general rule was recognized in both the majority and dissenting opinions but in the former the court considered the following recital in the final decree to have sufficed as judicial cognizance of an agreement establishing an exception to the rule: "`it further appearing that by consent of the parties and their solicitors of record an agreement has been reached, as hereinafter set forth, providing for payment of permanent alimony * * * it is * * * ordered, adjudged and decreed * * * that alimony and support money to the Plaintiff * * * is hereby decreed to be paid by the Defendant [executrix] in the * * * sum of $100.00 per month * * * during the remainder of the life of the Plaintiff, or until the remarriage of the Plaintiff * * *.'"
The author of the dissenting opinion thought the reference in the decree was not sufficiently definite to establish agreement to pay alimony after the former husband's death and that it "obviously" was a reference to an informal agreement such as could have originated in a corridor, or corner of the judge's chamber. True, it could have had such a humble birth but the fact is established by the decree itself that regardless of its origin it received the imprimatur of the chancellor and that gave it verity and validity. Two other circumstances give it weight as well. Unquestionably the former husband accepted it, lived under it for a quarter century and offered *429 no complaint. This strongly indicates that all the terms were acceptable to him.
It is difficult to see how he could have agreed only to the payment of alimony so long as he lived, for two reasons: The alimony was described as "permanent" and the only terminal limitations were the respondent's death, not his, and the respondent's remarriage. If he had had any misgiving about the effect upon his estate, he could have dissipated it when the decree was executed and if he wished to avert such inroads on his estate, he could have complained as 25 years passed and he, month by month for 300 of them, paid the alimony allotment freely, if not cheerfully.
It seems to this writer that to hold otherwise than to affirm the decision of the two courts would be to shun the very reasons for alimony in the first place. When a man takes unto himself a wife he assumes an obligation to support her. Not only is he pledged to furnish food and shelter for her sake but there is a corresponding duty so to care for her that she will not become a charge upon the community. No one questions the propriety or legality of the allotment of alimony as such. The former husband paid the installments faithfully. It can be assumed that the need of the former wife for support was as great after the husband died as before, and it can be further assumed that the want did not diminish during the ravages of a quarter century.
It is the conviction of this writer that the circumstances of this case lift it out of the operation of what might appear as an inexorable rule that alimony payments expire with the death of the former husband in the absence of an express agreement that they be continued by his estate.
I would affirm the judgment of the District Court of Appeal approving the decision of the chancellor.
ROBERTS, and ERVIN, JJ., concurred with THOMAS, J.
NOTES
[1] The District Court, in support of its conclusions, cited Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964); Underwood v. Underwood, 64 So.2d 281 (Fla. 1953); and Johnson v. Every, 93 So.2d 390 (Fla. 1957).
[2] Allen v. Allen, 111 Fla. 733, 150 So. 237 (1933); Deigaard v. Deigaard, 114 So.2d 516 (Fla.App. 3rd 1959), cert. denied, 117 So.2d 843 (Fla. 1960).
[3] Underwood v. Underwood, 64 So.2d 281 (Fla. 1953).
[4] Johnson v. Every, 93 So.2d 390 (Fla. 1957).
[5] Aldrich v. Aldrich, 163 So.2d 276, 280 (Fla. 1964).
[6] Ibid.