64 So.2d 281 (1953)
UNDERWOOD
v.
UNDERWOOD.
Supreme Court of Florida, Special Division A.
April 10, 1953.
*282 Goldstein & Goldstein and S. William Goldstein, Jacksonville, for appellant.
E.K. McIlrath, Jacksonville, for appellee.
DREW, Justice.
On September 11, 1945, after more than 24 years of married life as the wife of Herbert F. Underwood, Bertha M. Underwood filed a complaint for divorce in the *283 Circuit Court of Duval County. At the time of the institution of the suit they had one child, a boy, of the age of 19 years.
The record shows that the defendant husband filed his answer on the following day, along with a "waiver", a Master was appointed, testimony was taken on the same day, and on the following day a final decree of divorce was rendered by the Chancellor.
Attached to the Master's report was the following exhibit:

"Separation Agreement
"This Agreement made between Herbert F. Underwood, residing in Jacksonville, Duval County, State of Florida (hereinafter referred to as the `Husband'), and Bertha M. Underwood, residing in Jacksonville, Duval County, State of Florida (hereinafter referred to as the `Wife'),

"Witnesseth:
"That Whereas, the parties were married on the 16th day of March, 1921, and there is one child of the marriage, towit: Herbert Lee Underwood, now aged 19 years; and
"Whereas, in consequence of disputes and unhappy differences, the parties have technically separated and are now and for sometime have not been living as husband and wife, and, since their technical separation, have agreed to live separate and apart; and
"Whereas, the parties hereto each recognize the fact that it would be to the financial detriment to each to become involved in a prolonged Court action concerning financial arrangements to be made between the parties and, therefore, desire to stipulate concerning such arrangement:
"Now, Therefore, In Consideration Of The Premises and of the mutual promises and undertaking herein contained and for other valuable considerations, the parties agree as follows:
"1. The parties may and shall at all times hereafter live and continue to live separate and apart. Each shall be free from interference, authority and control, direct or indirect, by the other as if sole and unmarried.
"2. As and for alimony and in full and complete satisfaction of the husband's obligation to maintain and support the wife, the husband agrees to pay, or to cause to be paid, to the wife, commencing as of the 15th day of September, 1945, the sum of Two Hundred Fifty Dollars ($250.00) per month, payable One Hundred Twenty-Five Dollars ($125.00) on the 15th day of September, 1945, and Two Hundred Fifty Dollars ($250.00) on the 1st day of October, 1945, and a like amount of Two Hundred Fifty Dollars ($250.00) on the 1st day of each and every month thereafter as hereinafter provided, as and for the alimony and support of the wife for and during the remainder of her life. If the husband shall die before the wife, the said monthly payments shall not cease but the payment thereof shall be a first charge and lien against the estate of the husband, subordinate only to the expenses of his last illness and funeral expenses. It is expressly understood and agreed that said monthly payments of alimony shall not cease if a divorce is subsequently granted between the parties hereto and if, thereafter, the wife remarries, but such monthly payments shall continue during the life of the wife without any diminution or cessation.
"3. The husband has taken out an insurance policy on his life in the sum of Thirty Thousand Dollars ($30,000.00) in The New York Life Insurance Company and had had issued to him by the said company Policy No. 20206884. The wife is the beneficiary named in the said policy and it is stipulated and agreed that she shall continue to be the beneficiary of the said policy, irrespective of what the marital status of the parties may be. If, however, a divorce should be granted to the parties hereto and the wife should subsequently remarry, it is stipulated and agreed that the wife shall be beneficiary under the same policy to the extent of Twenty Thousand Dollars ($20,000.00) instead of the face of the policy in the amount of Thirty Thousand Dollars ($30,000.00), if the husband shall desire such reduction and shall notify the New York Life Insurance Company and shall have the necessary endorsements made by the Company to effect *284 such change. Such sum of Twenty Thousand Dollars ($20,000.00) shall be paid before anything is paid to any other beneficiary.
"4. Should the wife ever sue the husband for divorce, the husband not being in default under the terms of the agreement, the wife agrees that the provisions contained in this agreement are fully satisfactory and that this agreement shall be presented to the Court for the inclusion of the terms hereof in any final decree of divorce as and for all of the wife's claim against the husband for her support. If the wife shall hereafter sue the husband for divorce, nothing herein contained nor any agreement made between the parties hereto, whether incorporated herein or not, shall preclude the husband from defending such suit for divorce as he shall see fit.
"In Witness Whereof, the parties hereto have set their hands and seals, in duplicate originals, to this agreement on this 11th day of September, A.D. 1945.
 "Herbert F. Underwood (Seal)
 Herbert F. Underwood
 Bertha M. Underwood (Seal)
 Bertha M. Underwood
"Signed, sealed and delivered in the presence of:
 Paul E. Speh
 T.R. Watson
 As to Husband
 Fred B. Noble
 T.R. Watson
 As to Wife."
According to Mrs. Underwood, her husband had been urging her to get a divorce for several months. They had talked about financial matters in the event a divorce was obtained and had finally entered into the agreement which we have just quoted in full. She testified at the hearing that it had been finally consummated and entered into on the preceding day (September 11th). She was then shown the agreement, whereupon the following colloquy took place (Question by Mrs. Underwood's counsel, Mr. Noble, except where otherwise noted):
"Q. I will ask you to look at that document and state whether that is the agreement which you have arrived at? A. Yes.
"Q. What? A. Yes, that's it.
"Q. Will you state whether or not this is Mr. Underwood's signature to the document? A. Yes, it is.
"Q. And you, of course, having been married to him since 1921, know his signature? A. Definitely.
"Q. And is that your signature? A. Yes, it is.
"Q. And is it your wish to have this introduced in evidence in this case as evidence as to what you have arrived at as to property rights? A. Yes.
"Mr. Noble: We would like to offer this in evidence.
"Mr. Speh: I would like to ask her a few questions?
"Mr. Noble: All right."
Cross-examination
"By Mr. Speh: Q. Now, Mrs. Underwood, you understand that under the terms and provisions of this agreement that you will get from Mr. Underwood only these provisions that are incorporated herein, and that as far as making any further provision for you that he isn't obligated to do so? A. Yes, sir.
"Q. And you understand that if he were to remarry or anything like that he would be free to do as he wished with his other property? A. Yes.
"Q. Other than to take care of the provisions of this agreement? A. Yes.
"Q. And the terms of it are satisfactory to you? A. Yes.
"Q. And they are clearly understood by you? A. Yes." (Emphasis supplied.)
The final decree, omitting the formal parts, is as follows:
"It is ordered, adjudged and decreed as follows:

*285 "1. That the bonds of matrimony heretofore existing between the plaintiff and defendant be, and they are hereby forever dissolved.
"2. As and for temporary and permanent alimony and in full and complete satisfaction of the defendant's obligation to maintain and support the plaintiff, the defendant shall pay to-wit:
"(a) One Hundred Twenty-Five Dollars ($125.00) immediately, if the same has not heretofore been paid according to the stipulation between the parties which is in evidence herein.
"(b) The sum of Two Hundred Fifty Dollars ($250.00) each month in advance beginning October 1, 1945, as and for temporary and permanent alimony or support money of the plaintiff. If the defendant shall die before the plaintiff, the said monthly payments shall not cease but the payment thereof shall be a first charge and lien against the estate of the defendant, subordinate only to the expenses of his last illness and funeral expenses.

"(c) The defendant shall, at all times, promptly pay the premiums and all other obligations necessary to keep the same in force on life insurance policy No. 20206884 issued on the life of the defendant by The New York Life Insurance Company in the sum of Thirty Thousand Dollars ($30,000.00) and shall continue the plaintiff as the beneficiary thereof as the same now provides; provided, however, that if the plaintiff, shall, during the defendant's lifetime, remarry any one except the defendant, the plaintiff shall be the beneficiary under said policy to the principal amount of Twenty Thousand Dollars ($20,000.00), instead of Thirty Thousand Dollars ($30,000.00), if the defendant shall desire such reduction and shall so notify The New York Life Insurance Company and shall have the necessary endorsements made by the Company to effect such change. Such sum of Twenty Thousand Dollars ($20,000.00) shall be paid before anything is paid to any other beneficiary." (Emphasis supplied.)
On May 2, 1947, by consent decree, the final decree above set forth was amended by deleting therefrom those portions of the decree which are italicized. On February 8, 1952, Herbert F. Underwood filed in said original cause a "Petition to Modify Alimony Decree." The petition set forth the decree of September 13, 1945, supra, and the amendment thereto of May 2, 1947, and then alleged that since the "entry of said decrees" the circumstances of the parties had changed in that: (1) Bertha had remarried; (2) that when the decrees were entered Bertha was not in good health but that she is now recovered; (3) that when the decrees were entered Bertha was unemployed but now has a job and is able to earn her own livelihood; (4) that since the entry of said decrees Bertha has inherited a large estate from Herbert's mother; (5) that Bertha obtained said estate because of undue influence practiced on Herbert's mother; (6) that since said decrees Bertha had villified Herbert and "wickedly and willfully" tried to injure his business. The petition concludes with the statement that he is paid to date on the decrees and then prays that he be relieved of all further obligations under said decrees.
The wife answered the petition, moved to dismiss it and filed a petition praying the issuance of a rule to show cause directed to the husband for the purpose of enforcing the payments due the wife for the period subsequent to the date the petition for modification was filed.
The matter was heard by the lower Court on the above pleadings and certain interrogatories and answers thereto (which do not appear on the record). The lower Court entered the decree now before us for review, the portions material to the disposition of the questions before us being as follows:
"It appears to the Court that on the 13th day of September, A.D. 1945, there was entered herein a certain Final Decree allowing the plaintiff, the former Mrs. Underwood, a Decree of *286 Divorce against the defendant, Herbert F. Underwood, and also certain alimony, said alimony being described in paragraph 2 of said Decree. The stipulation attached to the Bill of Complaint merged in the Final Decree and the Court must look to the Final Decree for its construction and it is in the Final Decree that we find the whole obligation of the parties from the date of the Final Decree on, that is, from September 13, 1945 on.
"The Court further finds that in said Final Decree in the first lines of said paragraph 2, the alimony for the plaintiff is set forth and is so labeled:
"`As and for temporary and permanent alimony and in full and complete satisfaction of the defendant's obligation to maintain and support the plaintiff, the defendant shall pay to the plaintiff the following amounts at the following times, to-wit:'
"And imposes upon the defendant, Herbert F. Underwood, an obligation of temporary and permanent alimony and in full and complete satisfaction of his obligation to support the plaintiff. That the sub-paragraphs following paragraph 2 labeled (a), (b) and (c) are limited by the label contained in the heading of paragraph 2, viz: Alimony

"It further appears and the Court so finds that on May 2, 1947, there was by consent of the parties filed herein a certain document known as Amendments to Final Decree, which was in the nature of a Final Decree, so that in fact the alimony provisions of said Final Decree, as amended by the Amendments to Final Decree, literally read as follows:
"`2. As and for temporary and permanent alimony and in full and complete satisfaction of the defendant's obligation to maintain and support the plaintiff, the defendant shall pay to the plaintiff the following amounts at the following times, to-wit:
"`(a) One Hundred Twenty-five Dollars ($125.00) immediately, if the same has not heretofore been paid, according to the stipulation between the parties which is in evidence herein.
"`(b) The sum of Two Hundred Fifty Dollars ($250.00) each month in advance, beginning October 1, 1945, as and for temporary and permanent alimony or support money of the plaintiff.
"`(c) The defendant shall, at all times, promptly pay the premiums and all other obligations necessary to keep the same in force on life insurance policy No. 20206884 issued on the life of the defendant by The New York Life Insurance Company in the sum of Thirty Thousand Dollars ($30,000.00) and shall continue the plaintiff as the beneficiary thereof as the same now provides.'
"Since it is admitted in the pleadings and by counsel that since and prior to the month of February, 1952, the former Mrs. Underwood has remarried one other than the defendant, her former husband, Herbert F. Underwood, it seems to the Court that the act of remarriage itself without other or further order of Court should relieve the defendant, Herbert F. Underwood, from paying any further alimony whatsoever. It does not comport with public policy nor should it that a divorced wife should live with a new husband whose duty it is to support her and while at the same time she collects support from a previous husband. The Court, however, does not intend by this statement to infer that the defendant is entitled to recover back any payments of alimony made by him after his former wife's remarried (sic) and before the time of the filing of the Petition to Modify herein but specifically hold that he is not entitled to recover any such back payments.
"It appears further that the provisions of the insurance arrangement in sub-paragraph (c) of the Final Decree as amended by sub-paragraph (c) of the Amendments to Final Decree were in themselves of the nature of alimony just as were the provisions of sub-paragraph (b).

*287 "It further appears to the Court that all provisions of the original stipulation between the parties, provisions of the Final Decree with respect to alimony all were merged in the Amendments to Final Decree made May 2, 1947.
"The plaintiff, Berthan M. Soltermann, the former Mrs. Underwood, having remarried prior to the month of February, 1952, and there being no other impediment, children or otherwise, to the exercise by this Court of its judicial discretion with respect to continuing said alimony, it is thereupon considered
"* * * that the plaintiff's Motion to Dismiss the Petition for Modification of Decree contained in her First Defense be and the same is hereby denied, that the plaintiff's Petition for Rule to Show Cause be and the same is hereby denied, that the defendant, Herbert F. Underwood, be and he is hereby required to pay to the former Mrs. Underwood, the plaintiff, Bertha M. Soltermann, or to her solicitors of record, the aforesaid sum of $296.10 together with interest thereon at the rate of 6% per annum from April 30, 1951, said payment to be made within 10 days hereof and to be made at the office of said plaintiff's solicitors of record, 914 Graham Building, Jacksonville, Florida, and that the defendant, Herbert F. Underwood, be and he is hereby released and relieved of and from all further obligation to pay alimony to the plaintiff herein, including that provided by sub-paragraph (b) as well as sub-paragraph (c) of said Final Decree of September 13, 1945, as modified by Amendments to Final Decree of May 2, 1947, and that said Decree, viz: said Final Decree, as amended by said Amendments to Final Decree be and the same is hereby Amended accordingly and that this Decree of Modification is to take effect as of and with the month of February, 1952.
"It is further ordered, adjudged and decreed that said Final Decree of September 13, 1945, as amended by Amendments to Final Decree of May 2, 1947, shall have no further operation, force and effect on and with respect to the aforesaid life insurance policy, being No. 20206884 of the New York Life Insurance Company on the life of Herbert F. Underwood, and that said policy be and it is hereby exonerated, released and discharged of and from the operation, force and effect of this suit and of each and every Decree heretofore entered herein."
The underlying basic error committed by the lower Court was his conclusion that "the stipulation attached to the Bill of Complaint merged in the final decree and the Court must look to the final decree for its construction and it is in the final decree that we find the whole obligation of the parties * * *". That conclusion is unwarranted, erroneous and plainly does violence to the very clear and definite agreement of the parties appearing in the "Separation Agreement" which is referred to as a stipulation. The lower Court has constructed on this underlying and basic error another error, viz., that the payments owed by the husband to the wife are alimony and therefore governed by the decisions relating to the payments of alimony to a wife after her remarriage. While this is ordinarily true where the payment of true alimony is involved, even this rule is not without exceptions. 17 Am.Jur. 474, par. 610. In the paragraph above mentioned we find the statement: "Where an allowance is decreed to a divorced wife as a substitute for, or in lieu of, her rights in the husband's property * * * it seems that the allowance is not affected by her remarriage."
The Court has repeatedly held, along with practically every other Court in the land, that property settlements between husband and wife made in good faith are valid and legal and should not be disturbed by the Courts. Vance v. Vance, 143 Fla. 513, 197 So. 128. That these agreements should be construed and interpreted as other contracts is no longer open to question. Bergman v. Bergman, 145 Fla. 10, *288 199 So. 920. We said in the case of St. Lucie County Bk. & Tr. Co. v. Aylin, 94 Fla. 528, 114 So. 438, 441:
"* * * In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion, and apparent object of the parties, to determine the meaning and intent of the language employed. Indeed, the great object, and practically the only foundation, of rules for the construction of contracts, is to arrive at the intention of the parties. This is a most conspicuous and far-reaching rule, and involves the nature of the instrument, the condition of the parties, and the objects which they had in view; and, when the intent is thus ascertained, it is to be effectuated, unless forbidden by law. `Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.'" (Emphasis supplied.)
The agreement of the parties is crystal clear. They had lived together nearly a quarter of a century and during that time had acquired some degree of wealth. The record clearly shows that at least for some time before the divorce the wife was working in the jewelry business of her husband. The undisputed testimony is that she had done as much, or more, of the buying than he had except for diamonds. How long she had been actively participating in the business does not appear, but there can be no doubt that she had played a substantial part in helping acquire whatever wealth they possessed.
The fact that the divorce was awarded to the wife because of the conduct of the husband cannot be overlooked. For a long time the husband's attitude and conduct toward the wife had been such as to cause the wife mental and physical suffering. Her physician had told her "* * * if you continue at the rate you are going, you will not be able to take it very long." During this period her husband was importuning her to get a divorce and finally the "financial arrangements" were worked out and agreed upon.
The primary and controlling question is whether the agreement constituted a property settlement, or whether the financial arrangements constituted alimony.
At the very outset we dispose of the legal effect of the use of the word "alimony" in the agreement and decree. It is not what it is called but what it is that fixes its legal status. It is the substance and not the form which is controlling. In the case of International Trust Co. v. Liebhardt, 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700, the court held that the use of the word alimony was not conclusive and that it was substance and not form which guided the court. So far as agreements of the kind under consideration is concerned, where periodic payments are to be made the wife for the period of her life and is not limited to the joint lives of the parties, the legal effect of such payments are that they constitute property settlements and not alimony. By its very nature, alimony is limited to the lifetime of the husband. See Spear v. Spear, 158 Md. 672, 149 A. 468, from which we quote with approval in Vance v. Vance, supra; Emerson v. Emerson, 120 Md. 584, 87 A. 1033; Newbold v. Newbold, 133 Md. 170, 104 A. 366; Dickey v. Dickey, 154 Md. 675, 141 A. 387, 58 A.L.R. 634; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061.
The plain language of the agreement itself is wholly inconsistent with the idea that the financial arrangements are alimony. Not only did the agreement itself recite that each party recognized that "a prolonged court action concerning the financial matters" would be detrimental to both parties, but it specifically provided that such arrangements would be "in full and complete satisfaction of the husband's obligation to maintain and support the wife"  and then continued that such payments should be for "support of the wife during the remainder of her life." This language is clear enough, but just to make it doubly sure, the paragraph concluded with this provision:

*289 "* * * It is expressly understood and agreed that the said monthly payments of alimony shall not cease if a divorce is subsequently granted between the parties hereto and if, thereafter the wife remarries, but such monthly payments shall continue during the life of the wife without any diminution or cessation."
So far as the insurance policy is concerned, the agreement is just as specific  if not more so. It even contemplates that the wife will remarry and she agrees that in such event the husband may reduce the wife's interest therein from $30,000 to $20,000.
We now turn our attention to the effect the two decrees had on the agreement.
We have heretofore quoted from the testimony of the wife concerning the agreement. She testified that the agreement set forth the understanding of the parties and constituted the agreement reached and that it was her wish to have it introduced in evidence as the agreement she and her husband had arrived at as to property rights. Her husband's attorney examined her about this agreement, and particularly admonished her that she would receive from her husband only those things provided for in the agreement and nothing else. (See the testimony heretofore quoted.) The final decree referred to the agreement in the following manner: "and having considered the stipulation of the parties heretofore made and which has been filed in evidence. * * *" This decree did not supersede the agreement. There is nothing in the decree inconsistent with the agreement  so far as it goes. In fact, the language of the decree is almost verbatim the language of the agreement except that it omits that portion thereof which provides that the payments shall continue during the lifetime of the wife and the express provision quoted above concerning the event of the wife's remarriage. On this general subject we quote from 17 Am. Jur. 563, par. 736:
"As a general rule, provisions in the separation agreement for the support of the wife during life are not abrogated by a subsequent absolute divorce. Likewise, a provision in a separation agreement between husband and wife as to the making of payments to the wife for maintenance, in terms operative until her remarriage, is not affected by a divorce obtained by the husband. Nor has the court in awarding alimony any power to abrogate or modify such a provision without the consent of the parties, although it has been held that a release thereof may be required by way of condition in the decree for alimony and that the amount of alimony awarded may be credited upon the amount due under the agreement where by implication from the stipulations of the parties in the divorce suit this clearly appears to have been their intention, especially where injustice would otherwise be accomplished. It has also been held that statutory authority to modify alimony awards does not warrant the vacation or modification of the terms of a separation agreement which terms have been incorporated in a subsequent decree of divorce. Where the agreement provided that it shall terminate on divorce, however, the court may disregard it in subsequent divorce proceedings." (Emphasis supplied.)
The above paragraph has been supplemented by a new paragraph (See 1952 Cumulative Supplement to Vol. 17, page 138, Am.Jur.) which reads as follows:
"It has been held without exception that where a separation agreement provides for the continuance of payments to the wife after the death of the husband, the right of the wife to receive the payments after the husband's death is not affected by an intervening divorce decree which either incorporates the former agreement or substantially provides for such payments in accordance therewith. In some cases the courts have reached their conclusion that the right of a divorced wife to enforce a provision of a separation agreement for the continuance of payments after her former husband's death is not affected by an intervening divorce decree upon the theory that while *290 `alimony' ordinarily ceases upon the husband's death, the incorporation or embodiment in a divorce decree of a separation agreement providing for the continuance of payments during the life of the wife does not constitute such payments `alimony', and they are therefore not subject to the rule that payments of alimony cease upon the husband's death." (Emphasis supplied.)
The subsequent decree merely cancelled the provision that the monthly payments should be a lien or charge against the husband's estate and, apparently, in exchange for such concession, took from the husband the right to reduce the insurance policy from $30,000 to $20,000 in the event of the wife's remarriage.
The question of the right of the husband under Section 65.15, F.S.A., to a modification of the provision of the separation is controlled by Vance v. Vance, supra. The appellee husband has made no showing of change of circumstances that would warrant overthrowing the provisions of the separation agreement.
The decree appealed from is hereby reversed for further proceedings consistent herewith.
Reversed.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.