240 So.2d 193 (1970)
William G. ZAKOOR, Appellant,
v.
Nancy P. ZAKOOR, Appellee.
No. 69-720.
District Court of Appeal of Florida, Fourth District.
October 14, 1970.
*194 Perry W. Lewis, Detroit, Mich., for appellant.
J.I. Watson and S. Sherman Weiss, Hollywood, for appellee.
REED, Judge.
The plaintiff-appellee, Nancy P. Zakoor, filed a complaint for divorce in the Circuit Court for Broward County, Florida, in April of 1967. The complaint charged that her husband, the defendant-appellant, William G. Zakoor, was guilty of extreme cruelty. The complaint sought a divorce, *195 custody of the three children of the parties and alimony.
The appellant states the various points on appeal in detailed fashion; however, the point on appeal simply stated is whether or not the trial judge erred in construing a property settlement agreement between the parties as an agreement providing only for child support and custody and awarding payments to the wife inconsistent with that agreement.
On 9 April 1969, before the entry of the final decree, the plaintiff filed a motion entitled "Motion To Amend Property Settlement Agreement". It alleged that plaintiff and defendant entered into a property settlement agreement on 10 April 1967, but charged that the agreement was entered into by the plaintiff at a time when she was unaware that her husband held certain assets which he failed to disclose to her and that to enforce the agreement would be a fraud upon her and her children. The motion was apparently based on the bare assertion that the property settlement agreement was fraudulent in that "* * * the plaintiff wife was unaware that the defendant husband held these assets; that there was a failure to disclose them by him * * *." The defendant filed an answer in which he stated that his wife was aware of all of his assets at the time the property settlement was entered into.
The property settlement agreement between the parties was introduced in evidence by the defendant at the final hearing on 12 September 1969. In essence it provides that the husband should convey to the wife by a warranty deed, subject to existing mortgage and taxes, all of his interest in the parties' residence located at Hallandale, Florida, together with furniture, furnishings, and fixtures contained in the house. The agreement also provides that the wife shall have custody of the minor children and receive $500.00 per month for their support. The defendant was obligated to pay J.I. Watson, the wife's attorney, $500.00 immediately upon signing the agreement. In return for the foregoing the wife agreed to release the husband from any obligation for alimony, support, attorney's fees, court costs, and suit money. The agreement also stated that it was in full settlement of all joint property rights. Paragraphs 6 and 7 of the agreement read as follows:
"6. That the Wife hereby expressly releases the Husband from any duty, obligation, or responsibility to her for alimony, support, attorney's fees, Court costs, and suit money except as herein provided, and accepts the provisions of this Agreement in lieu of any claim for same.
"7. That this Agreement is in full settlement of all joint property rights, claims for alimony, support, or suit money, or rights which either party now has, or may hereafter have against the other, and each acknowledges full and complete explanation and advice of independent counsel of his or her own choice, and an understanding of their rights, duties, and privileges to each other, and both acknowledge that this Agreement has been freely and voluntarily entered into, and each releases the other from any and all claims, including the right to share in the estate of the other. The Wife expressly waives any right of dower in her husband's estate." (Emphasis added.)
At the final hearing Mrs. Zakoor's attorney stated that he was paid the $500.00 called for by the property settlement agreement. Mrs. Zakoor's attorney also admitted that there was a property settlement agreement executed between the parties on 10 April 1967, but he stated that after Mrs. Zakoor realized that the property settlement agreement did not provide anything for her she indicated that she could not accept it.
The plaintiff's testimony indicates that she was thirty-five at the time of the final hearing and had been married to the defendant for fifteen years. She testified that the monies which "she and her husband *196 have" came from his working and "we saving". She indicated that she never worked before their separation and said that she understood her husband inherited $20,000.00. She testified to expenses for herself and children totaling approximately $597.00 per month. Mrs. Zakoor testified that she works three days a week as a cocktail waitress at the Diplomat Hotel and earns $5.05 in wages, but gets tips which make her income average approximately $15.00 per day. She testified that she has ability as a typist and at one time earned up to $65.00 per week as a secretary. She gave no testimony as to the extent of her knowledge of her husband's property at the time she executed the property settlement agreement, other than her reference to what she understood her husband had inherited.
There was no testimony by either party that would justify a finding that at the time the property settlement was executed it was not made in good faith. There was no testimony indicating any misrepresentations by Mr. Zakoor or any undue advantage taken by him. It appears from the record, and particularly the comments by Mrs. Zakoor's attorney at the opening of the hearing, that he prepared the agreement and represented Mrs. Zakoor at the time it was prepared and signed.
The final decree was dated 1 October 1969 and did the following:
(a) granted Mrs. Zakoor a divorce;
(b) construed the property settlement agreement between the parties as an agreement providing for child support and custody, but not as a settlement of the property rights of the parties;
(c) gave the plaintiff possession of the family home and ordered the defendant to pay one-half of the principal and interest payments on the mortgage encumbering the home place together with one-half of the taxes, insurance, and necessary maintenance and repairs and any special assessments or improvement liens now or hereafter encumbering the property "so long as said home is jointly owned by the parties and used as a residence for the rearing of the children of the parties";
(d) required the defendant to pay the plaintiff $500.00 per month for child support with certain provisions for diminution upon attainment of independence by the children;
(e) required the defendant to pay the plaintiff the sum of $15,000.00 in cash and in addition to transfer to the plaintiff 150 shares of Associated Drygoods stock or, in lieu of transferring the stock, pay the plaintiff an additional $6,600.00 in cash;
(f) required the defendant to pay the plaintiff's attorney $500.00 as additional attorney's fees plus $61.00 in costs;
(g) required the defendant to pay a $3,200.00 encumbrance on a Buick automobile which the defendant had theretofore transferred to the plaintiff.
It does not appear from the decree what the nature of the lump sum awards was  whether lump sum alimony or special equities.
It is apparent from an examination of paragraphs 6 and 7 of the property settlement agreement between the husband and wife that the agreement was intended not merely for the support of the children of the marriage, but also as a full and complete settlement of the property rights of the parties. Any other interpretation ignores those provisions of the contract. This conclusion leads to the question of whether or not the trial court can be sustained on the basis that it could reject the agreement, to the extent that it provided for a property settlement between the parties.
*197 The plaintiff cites in support of the action of the trial court the case of Gelfo v. Gelfo, Fla.App. 1967, 198 So.2d 353. There the husband and wife entered into a property settlement agreement dividing their properties and providing for a waiver of the wife's right to alimony. The trial judge ruled that the division of properties as specified in the contract should be complied with, but awarded alimony to the wife in disregard of the contractual waiver of alimony. On appeal it was held that although there was no evidence of fraud, the trial court could reject a provision in the property settlement agreement which he found unconscionable, but at the same time enforce the balance of the agreement. The Gelfo decision is distinguishable from the present case in that the former involved a finding of unconscionability with respect to the property settlement agreement. This finding was perhaps based on the fact that Mrs. Gelfo was not represented by an attorney at the time the property settlement agreement was executed.
The principle which controls our case is that embodied in Miller v. Miller, 1942, 149 Fla. 557, 7 So.2d 9 and Underwood v. Underwood, Fla. 1953, 64 So.2d 281, wherein the Florida Supreme Court in effect held that property settlement agreements which relate to alimony or to an adjustment of the property rights of the parties made by husband and wife in good faith and free from fraud, deceit, coercion, or trickery, though made in contemplation of a divorce, should be upheld by the courts. In Miller v. Miller, supra, it appears that the wife entered into a property settlement agreement with the husband whereby she released all of her rights in and to the husband's property as well as her right to alimony for the sum of $6,000.00. In a collateral attack on the divorce decree, the wife attempted to vacate her property settlement agreement and to have an award of alimony conferred on her. She claimed that her husband owned property at the time of the property settlement agreement valued at $75,000.00 to $100,000.00. The supreme court concluded that although the wife made a settlement with her husband for an inadequate amount when considering the value of his holdings, there was no evidence to establish fraud, coercion, deceit or overreaching on the part of the husband and that the wife should be bound by the agreement.
In Underwood v. Underwood, supra, 64 So.2d 281, 287, the Florida Supreme Court said with respect to a property settlement agreement:
"The Court has repeatedly held, along with practically every other Court in the land, that property settlements between husband and wife made in good faith are valid and legal and should not be disturbed by the Courts. * * * That these agreements should be construed and interpreted as other contracts is no longer open to question. * * *"
On the basis of the authority in Miller v. Miller and Underwood v. Underwood, supra, it appears to be the general rule in Florida that property settlement agreements between husband and wife made in contemplation of a divorce are, in the absence of fraud, coercion, or overreaching, valid and binding on the parties and should be respected by the courts. For additional authority see Sedell v. Sedell, Fla.App. 1958, 100 So.2d 639, 642; Pemelman v. Pemelman, Fla.App. 1966, 186 So.2d 552, and Hostler v. Hostler, Fla.App. 1963, 151 So.2d 672. It further appears to be an accepted principle with respect to such property settlement agreements that the burden of demonstrating fraud, concealment, or overreaching is on the party who seeks to abrogate the agreement. Pemelman v. Pemelman, supra, Cowen v. Cowen, Fla. 1957, 95 So.2d 584.
In the present case the record is devoid of any testimony that the property settlement agreement was the product of fraud, duress, concealment, coercion or overreaching. The plaintiff-wife claimed in her motion to amend the property settlement *198 agreement that her husband had concealed from her the fact of the existence of certain assets. Her testimony completely failed to support this allegation. On the other hand, it appears that at the time the property settlement agreement was prepared the wife was represented by an attorney who actually prepared the agreement. The husband at that time was not represented by an attorney. Under these circumstances the husband was not in a fiduciary relationship with the wife and had no duty, on his own motion, to make any representations to her with respect to his property. Fuller v. Fuller, Fla. 1953, 68 So.2d 177. If the wife was dissatisfied with the extent of her knowledge of her husband's property she could have made informal inquiries of the husband, through her attorney, or resorted to the ample discovery procedures provided by the Rules of Civil Procedure. See Ortiz v. Ortiz, Fla.App. 1967, 194 So.2d 38. Furthermore, it affirmatively appears from the testimony that the husband and wife were married for approximately thirteen years at the time the property settlement agreement was executed. Under these circumstances it is reasonable to assume that she had at least a general understanding of the nature and the extent of her husband's earnings and assets. Compare Del Vecchio v. Del Vecchio, Fla. 1962, 143 So.2d 17.
We conclude: (a) the trial court erred in construing the property settlement agreement as relating only to child custody and support, and (b) the trial court cannot be sustained on the ground that it was authorized on the basis of the record to reject or rescind the property settlement of the parties.
In the final judgment the defendant was ordered to pay $500.00 to the plaintiff's attorney over and above the $500.00 which he had previously paid pursuant to the property settlement agreement. In view of the fact that we hold the property settlement agreement valid, this payment is unwarranted. Smith v. Smith, 1925, 90 Fla. 824, 107 So. 257.
To the extent the final judgment grants the plaintiff a divorce, child custody and child support, it is affirmed. The balance of the final judgment is quashed and the trial court is directed on remand to modify the final judgment by adding a provision requiring the parties to comply with the property settlement agreement admitted in evidence as defendant's Exhibit 1.
Affirmed in part; reversed in part.
CROSS, C.J. and OWEN, J., concur.