## YOUNG v. YOUNG.

No. 73-1835-CA(D)-03.

Circuit Court, Palm Beach County.

February 11, 1974.

S. Robert Zimmerman, Pompano Beach, for the wife.

Charles A. Nugent, Jr., West Palm Beach, for the husband.

LEWIS KAPNER, Circuit Judge.

*Final judgment:* This is an action for dissolution of marriage.

The wife has offered into evidence depositions of Willard Wheeler and Dolores Wheeler. These shall be received in evidence. Oliver v. Oliver, Fla. App. 4th, 385 So.2d 637.

These parties were married in 1953 and cohabitated as man and wife until the fall of 1970 when they entered into a property settlement agreement. They have lived separate and apart since that time.

The wife filed an action for divorce on November 2, 1970, but this action died for lack of prosecution. On May 22, 1973, the husband filed a petition asking that the marriage be dissolved, and that the aforesaid separation agreement be incorporated in the final judgment.

The wife denies that the marriage is irretrievably broken and she seeks to set the agreement aside on the ground that the parties, by their actions, have abandoned the agreement, and on the further ground that through fraud, duress and over-reaching conduct her husband caused her to sign the agreement. In this respect she claims she was not represented by independent counsel.

The husband has replied that his wife was in fact represented by independent counsel — her brother who drew up the agreement and filed both petitions for dissolution — and further that in accepting the benefits of the contract she is now estopped from attempting to set it aside. He agrees with her that he has paid her more than she was entitled to under the agreement but, rather than consider this to be an abandonment of the contract, he now asks for a credit for those payments.

As a preliminary finding, the court finds that the wife is not estopped from setting aside this agreement merely because she has accepted benefits under it. As soon as she reached the opinion that the agreement was fraudulently obtained she took steps to set it aside and, in fact, in her very first pleading in this case, she sought benefits under the husband's obligation of temporary support rather than under the agreement.

The court finds that the following events led up to the agreement —

These parties have been married since 1953 and they have three children between them. It is the husband's second marriage and the wife's first. They apparently had a good marriage together except that the husband would philander from time to time. This conduct led to numerous separations and reconciliations, frequently accompanied by the signing of a separation agreement.

In the fall of 1970 the husband was involved in a serious automobile accident. While he was still in the hospital the wife discovered that he was again seeing another woman. They agreed to separate and they agreed to the terms of the separation. They then contacted Willard Wheeler, Esquire, an attorney and brother of the wife, who informed them that he was agreeable to drafting the agreement as per the terms outlined to him so long as there would be no complications or contested proceedings.

Mr. Wheeler drafted the agreement which provided, inter alia, that the husband would pay the wife the sum of $20,000 per year for alimony and child support. Subsequently, the wife became concerned over the husband's health and future business prospects and sought to have the agreement modified to give her a sum certain. This in fact was done and the alimony provision was changed to a lump sum of $200,000, payable over a number of years, and including $42,000, of which $32,000 represented securities jointly owned by the parties, already given to her.

From this and other relevant evidence presented at the hearing the court finds that Mr. Wheeler represented the wife in all proceedings with the possible exception of the initial contact in which he may have simply been the passive recipient of a joint commu-

nication. As soon as he became involved in the case in a material way he represented the wife.

The agreement, in its final form provided, inter alia, that the husband would transfer his 50% interest in the marital home to his wife and she in turn would transfer her 50% interest in certain real estate and in the parties' business, which was and is a successful Lincoln-Mercury dealership in Delray Beach. Furthermore, the husband was to pay $200,000 as lump sum alimony over a period of eleven years; but, since this sum included $42,000 already transferred to her the agreement, in effect, was for $158,000 over a period of eight plus years. Additionally, the wife agreed to assume all responsibilities of child support.

In weighing the validity of this agreement we start with the proposition that separation agreements should be upheld by the court so long as they are free from fraud, deceit, coercion, or trickery. Zakoor v. Zakoor, 4th DCA, 240 So.2d 193, 197; Miller v. Miller, 7 So.2d 9; Underwood v. Underwood, 64 So.2d 281. A court should not overturn an agreement freely entered into simply because to the court the terms appear unfair. Del Vecchio v. Del Vecchio, Sup. Ct., 143 So.2d 17; Sedell v. Sedell, 100 So.2d 639, 642; Miller v. Miller, supra.

In determining whether the agreement was reached as a result of fraud or other misconduct on the part of the husband the court should consider whether the agreement is fair *"upon its face"*, Del Vecchio v. Del Vecchio, supra (emphasis added). It is not *actual* fairness, viewed retrospectively and minutely, but only that apparent fairness or unfairness, based upon knowledge available to the parties, which is relevant to the issue of fraud and concealment. If both parties operate upon the same notions in entering into an agreement, even though those notions may be mistaken, the result may be unfair, but this would not necessarily indicate that one party was guilty of fraud or concealment.

Viewed in this respect, the wife receives alimony and child support in a sum certain of $200,000, including $42,000 already transferred to her, over an eight year period. Treating this portion separately from the property settlement provision, this cannot be said to be so grossly unfair as to raise a presumption of fraud for two reasons — (1) The wife's motivating belief that the husband's health or business instability might result in early incapacitation or death, or business failure; and (2) the possibility of remarriage or improved earning ability on her part, both of which could have cut off periodic alimony. Furthermore, while the burden of child support fell entirely upon the wife, there is substantial evidence that the husband intended to and, in fact, has, provided educational

and other expenses for the children notwithstanding his obligation. Provisions relating to child support — or alimony for that matter — are always subject to review and approval. Sedell v. Sedell, 1st DCA, 100 So.2d 639. Thus, relative to the issue of fraud or concealment, any unfairness in this provision is not very convincing evidence of such fraudulent conduct on the part of the husband.

The greatest apparent disparity in the agreement is found in the provisions whereby the wife transfers her 50% interest in some real estate and the Lincoln-Mercury dealership in return for the husband transferring his 50% interest in the marital home. Unquestionably this provision is greatly disproportionate in favor of the husband and it was so at the time the agreement was signed. However, the husband testified that the wherewithal to purchase the dealership came from funds he had prior to the marriage; that he placed ownership in her name for business purposes only; and that she contributed little or nothing to the business. From these considerations it could well have been concluded by both parties that the husband, by virtue of his special equity in the dealership, would have been entitled to the entire ownership, or close to it, her claim being on the total worth of the parties but not on the business directly. Viewed this way the agreement does not appear to be as grossly unfair as the paper ownership would make it appear. See Sedell v. Sedell, supra, pg. 642, discussing the nature of a provision whereby the wife agrees to relinquish special equities.

The nature of the disproportionate division was not only real but obvious to both parties at the time. Nothing was concealed from the wife by virtue of her not obtaining an independent appraisal of its value. That it has been subsequently appraised at $1,000,000 as of that time (and that valuation is subject to a reasonable difference of opinion) should come as no real surprise. A layman knows that such a dealership is worth a substantial amount. Where the wife went wrong was not in her estimation of the worth of the dealership but in her estimation of the worth of the husband with respect to his health and his prospective business stability.

Thus, the court finds that the agreement on its face was not so unfair as to raise a presumption of fraud and overreaching conduct and the wife then has the burden of proving that the husband was guilty of such conduct. Counsel for the wife argues that it does not matter who has the burden since it is undisputed that the wife did not have complete knowledge of the husband's wealth; but this is not the test. The test is whether the husband, by fraud, deceit, concealment or trickery, forced her to sign the agreement. Minutely detailed disclosure is not required. What is required is that she had "some understanding of her rights and a general and approximate knowledge of his property and resources." The basic issue is con-

cealment, not the absence of disclosure, and the wife may not repudiate if she is not prejudiced by lack of information. Del Vecchio v. Del Vecchio, Sup. Ct., 143 So.2d 17, 21.

*Del Vecchio* held that the relationship between the parties to an antenuptial agreement is one of mutual trust and confidence. This is frequently the case with separation agreements as well, though not necessarily so. Whether a fiduciary relationship exists depends upon the circumstances of each case. There is a vast difference between contemplation of marriage and contemplation of divorce. Zakoor v. Zakoor, 240 So.2d 193; Fuller v. Fuller, 68 So.2d 177. These parties were dealing at arm's length in reaching this agreement. Where, as here, the wife is represented by counsel, is at least as aggressive as the husband in insisting on a separation and on a separation agreement, and where she is clearly motivated by self-interest, no fiduciary relationship exists and the burden is on her to inquire and not upon him to inform. Del Vecchio v. Del Vecchio, supra; Fuller v. Fuller, supra; Zakoor v. Zakoor, supra, pg. 198.

These parties had been married for 17 years, had filed joint income tax returns, used a joint checking account in which the husband deposited all his income, they had discussed — at least in generalities — their financial status, and she was aware of the husband's main source of resources and income. Under these circumstances it is reasonable to assume that she had at least a general understanding of the nature and the extent of his earnings and assets. If the wife was dissatisfied with the extent of her knowledge she could have made at least informal inquiries. See Zakoor v. Zakoor, supra, pg. 198. Such inquiries, when finally made, disclosed no real surprises; they simply confirmed that the husband had substantial means at the time of the separation.

Upon consideration of the evidence and the premises herein it is thereupon found that the separation agreement entered into by the parties is valid.

It is thereupon ordered as follows —

1. The marriage is dissolved a vinculo matrimonii, the same being irretrievably broken.

2. The wife shall have custody of the three children and the husband shall have the right of reasonable visitation.

3. The separation agreement entered into and attached to the petition and designated as husband's exhibit #1 shall be incorporated in the final judgment and shall be binding on both parties, with the following limitations —

a. Those sums already advanced by the husband, whether pursuant to the agreement, the temporary order, or over and above said documents, shall not be returned to the husband but shall be considered as sufficient temporary support, see Belcher v. Belcher, Sup. Ct., 271 So.2d 7, except that the husband, pursuant to the court's temporary support order, should pay the wife as follows —

I. He shall pay $2,000 as back temporary support on or before February 25, 1974;

II. He shall reimburse the wife or provide for, within a reasonable time, the following repairs to the marital home —

A. Thomas Roofing — $3,384. B. Air-conditioner-Compressor — $800: past air handler repairs — $104; and future air handler repair or replacement. C. House painting. D. Plaster repairs over the dining room. E. $400 toward the other repairs described by the wife. F. The husband may deduct the $500 he has previously advanced to the wife for said repairs.

b. In consideration of the children's need for transportation, the husband shall provide the wife an automobile to use and shall maintain it and keep it in proper repair. This obligation shall cease when the youngest child becomes 18 years old.

c. The husband shall pay the sum of $250 per month per child as child support until each child reaches the age of 18. See Posner v. Posner, Sup. Ct., 233 So.2d 381, 386.

d. So long as any child remains living with the wife after the age of 18, the husband shall pay the wife $100 per month until that child reaches the age of 21. A child attending college outside Palm Beach County shall not be considered to be living at the wife's house.

e. The father shall be responsible for the college expenses of the children, within normal parental guidelines.

f. The father shall be responsible for tuition for any private school for the children provided that both parents agree upon such placement.

g. While a lump sum alimony award may not be ordered prior to dissolution, 10A Fla. Jur., *Dissolution of Marriage, Separation and Annulment,* §68; Bredin v. Bredin, 89 So.2d 353; Quarngesser v. Quarngesser, 177 So.2d 875, there is no reason why payments therefor cannot be made prior to dissolution; indeed such payments are more advantageous to the wife than to the husband. However, payment of such consideration will not relieve a husband of his obligation of support prior to a dissolution even though divorce is contemplated or pending. Belcher v. Belcher, supra. The agree-

ment must be read in light of *Belcher* and the following facts—half of the $32,000 in securities which was transferred to the wife belonged to the wife; these sums as well as $10,000 had already been given to her; and .all the sums given to the wife by the husband since the separation to the present are reasonable as temporary alimony and child support. When so considered, the court concludes that the $200,000 lump sum alimony does not come due until the date of dissolution and the scheduled payments shall remain as in the agreement, viz, $18,000 per year.

h. Counsel for the wife has argued that even if the agreement be upheld, it should be modified because of the husband's improved financial status. An award of lump sum alimony may not be modified even in the event of a change of circumstances. 10A Fla. Jur., *Dissolution of Marriage, Separation and Annulments*, §51, 69; Frischkorn v. Frischkorn, 223 So.2d 380, cert. den. 228 So.2d 909, cert. den. 229 So.2d 868.

i. Upon stipulation of the parties the question of attorney's fees and costs shall be determined at a subsequent hearing.

j. Jurisdiction of this cause is retained for the purpose of entering such further orders as to the court may seem necessary.